FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★   JUN 1 3 2019   ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

KATHY DREW KING, Regional Director of
Region 29 of the National Labor Relations Board,
for and on behalf of the NATIONAL LABOR
RELATIONS BOARD
                    Petitioner

CV 19-3496
                    CV

        v.

CONSTRUCTION & GENERAL BUILDING
LABOERS' LOCAL 79, LABORERS
INTERNATIONAL UNION OF NORTH AMERICA
                    Respondent

BLOCK, J.

BLOOM, M.J.

## PETITION FOR TEMPORARY RESTRAINING ORDER PURSUANT TO §10(l) OF THE NATIONAL LABOR RELATIONS ACT, AS AMENDED

To the Honorable Judges of the United States District Court for the Eastern District of New York:

**COMES NOW** Kathy Drew King, Regional Director for Region 29 of the National Labor Relations Board (the "Board"), and petitions this Court for and on behalf of the Board, pursuant to §10(l) of the National Labor Relations Act (the "Act"), as amended, 29 U.S.C. §160(l) (the "Act"), for a temporary restraining order pursuant to Fed. R. Civ. P. 65(b) pending the final disposition of the matters herein involved now pending before the Board on charges alleging that Construction & General Building Laborers' Local 79, Laborers' International Union of North America ("Respondent") has engaged in, and is engaging in, acts and conduct in violation of §8(b)(4)(i) and (ii)(B) of the Act, 29 U.S.C. §158(b)(4)(i) and (ii)(B). In support of this petition, Petitioner respectfully shows as follows:

1.      Petitioner is the Regional Director of the Twenty Ninth Region of the Board, an agency of the United States, and files this Petition for and on behalf of the Board.

2.      Jurisdiction of this Court is invoked pursuant to §10(l) of the Act, 29 U.S.C. §160(l), which provides that the Board shall have power, upon issuance of a Complaint charging

1

that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order.

3.   (a)   On May 9, 2019, Mannix Family Market @ Hylan Blvd LLC (Charging Party Hylan) and Mannix Family Market @ Forest and Richmond Ave. LLC (Charging Party Richmond) (collectively Charging Parties) filed a charge with the Board in Case No. 29-CC-241297 alleging that Respondent violated §8(b)(4)(i) and (ii)(B) of the Act, 29 USC §158(b)(4)(i) and (ii)(B). A copy of this charge was served on Respondent by U.S. mail on May 13, 2019.

4.   The aforesaid charge was referred to Petitioner as Regional Director of Region 29 of the Board.

5.   Following a review of the field investigation during which all parties had an opportunity to submit evidence, the Petitioner determined that there is reasonable cause to believe, as alleged in the charge in Case 29-CC-241297, that Respondent was engaging in unfair labor practices in violation of §8(b)(4)(i) and (ii)(B) of the Act, 29 USC §158(b)(4)(i) and (ii)(B).

6.   On June 6, 2019, Petitioner, upon the aforesaid charge and pursuant to §10(b) of the Act, issued a Complaint and Notice of Hearing, alleging that Respondent has been engaging in unfair labor practices within the meaning of §8(b)(4)(i) and (ii)(B) of the Act, 29 USC §158(b)(4)(i) and (ii)(B). The Complaint was amended June 11, 2019. A hearing on the allegations of the Complaint, as amended, is scheduled to be held before an Administrative Law Judge of the Board on July 24, 2019.

7.   Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, true copies of the charge and service thereof in Case 29-CC-241297, the Complaint, Amendment to the Complaint,

supporting affidavits and documents are attached and marked as Petitioner Exhibit 1-11 and incorporated as though fully set forth.

       8.       Petitioner avers that there is a likelihood that the allegations set forth in the Complaint, as amended, are true and that Respondent has engaged in, and is engaging in, unfair labor practices in violation of §8(b)(4)(i) and (ii)(B) of the Act, 29 USC §158(b)(4)(i) and (ii)(B), for which a remedy will be ordered by the Board, but that the need for immediate injunctive relief exists due to Respondent's egregious conduct and the Board's order remedying the unfair labor practice conduct will be frustrated without the temporary restraining order sought herein. In support thereof, and of the request for a temporary restraining order, Petitioner, upon information and belief, shows as follows:

       a)       At all material times, Charging Party Hylan has been a limited liability corporation with an office and place of business located at 2424 Hylan Boulevard, Staten Island, New York, (Hylan Store) and has been engaged in the retail sale of groceries and related products.

       b)       In conducting its business operations described above in paragraph 8(a), during the past 12 months, the Charging Party Hylan:

       (i)       derived gross revenues in excess of $500,000; and

       (ii)       purchased and received goods valued in excess of $50,000 directly from enterprises located outside the State of New York.

       c)       At all material times, Charging Party Hylan has been an employer engaged in commerce within the meaning of Section 2(2), (6), and (7), 29 USC 152 (2), (6), and (7) of the Act.

3

d)      At all material times, Charging Party Richmond has been a limited liability corporation with an office and place of business located at 985 Richmond Avenue, Staten Island, New York, (Richmond Store) and has been engaged in the retail sale of groceries and related products.

e)      In conducting its business operations described above in paragraph 8(d), during the past 12 months, Charging Party Richmond:

(i)      derived gross revenues in excess of $500,000; and

(ii)      purchased and received goods valued in excess of $50,000 directly from enterprises located outside the State of New York.

f)      At all material times, Charging Party Richmond has been an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act, 29 USC 152 (2), (6), and (7).

g)      At all material times, Mannix Family Market @ Veterans Road LLC (Mannix Veterans) has been a limited liability corporation with an office and place of business located at 3010 Veterans Road West, Staten Island, New York, (Veterans Store) and has been engaged in the retail sale of groceries and related products.

h)      In conducting its operations described above in paragraph 8(g), during the past 12 months, Mannix Veterans:

(i)      derived gross revenues in excess of $500,000; and

(ii)      purchased and received goods valued in excess of $50,000 directly from enterprises located outside the State of New York.

i)      At all material times, Mannix Veterans has been an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act, 29 USC 152 (2), (6), and (7).

4

j)       At all material times, Respondent has been a labor organization within the meaning of Section 2(5) of the Act, 29 USC 152 (5).

k)       At all material times, individuals whose identity is known to Respondent but presently unknown to the General Counsel engaged in activity on behalf of Respondent as described below in paragraphs 8(o) through 8(s) and have been agents of Respondent within the meaning of Section 2(13) of the Act, 29 USC 152 (13).

l)       At all material times, Respondent has been engaged in a labor dispute with Kimco Realty Corp. (Kimco) and GTL Construction LLC (GTL).

m)       Wakefern Food Corp. is subject to a lease agreement with Kimco to lease space at a shopping center currently being constructed by GTL located at 2600 Hylan Boulevard, Staten Island, New York (Boulevard Project). Kevin Mannix, the majority owner and operator of Charging Party Hylan, Charging Party Richmond, and Mannix Veterans, entered into a sub-lease agreement with Wakefern Food Corp. to operate a grocery store at the Boulevard Project upon completion of construction.

n)       At no material time has Respondent been engaged in a labor dispute with Charging Party Hylan, Charging Party Richmond or Mannix Veterans.

o)       On or about April 29, 2019, and continuing on various dates thereafter, Respondent, by its agents, at the Charging Party's Hylan Store, erected multiple large inflatable rats adjacent to the entrance of the store in support of Respondent's dispute with Kimco and GTL, described above in paragraph 8(l).

p)       On or about May 15, 2019, and continuing on various dates thereafter, Respondents, by their agents, erected an inflatable cockroach adjacent to an inflatable rat at the

5

Charging Party's Hylan Store in support of Respondents' dispute with Kimco and GTL, described above in paragraph 8(l).

q)     On or about May 15, 2019, Respondent by its agents, at the Charging Party's Hylan Store, engaged in picketing, including blocking the sidewalk, using bullhorns to amplify shouting, distributing handbills, chanting, and blowing whistles, in support of Respondent's dispute with Kimco and GTL, described above in paragraph 8(l).

r)     On or about May 20, 2019, Respondents by its agents, at Veterans Store, erected a large inflatable rat adjacent to the entrance of the store in support of Respondent's dispute with Kimco and GTL, described above in paragraph 8(l).

s)     At various times between April 29, 2019, and continuing on various dates thereafter, while the inflatable rats and cockroach were erect, Respondent's agents distributed handbills to the public in connection with the actions described above in paragraphs 8(o) through 8(r), at the Charging Party's Hylan, Richmond, and Veterans Stores, which read, "Shame on your Kevin Mannix!! Kevin Mannix Owner and Operator of 3 ShopRite grocery stores on Staten Island is allowing GTL Construction to exploit construction workers as 2600 Hyland [sic] Boulevard" in addition to distributing other handbills, and in furtherance of the labor dispute described above in paragraph 8(l).

t)     By the conduct set forth above in paragraphs 8(o) through 8(r), Respondent has induced or encouraged individuals employed by Charging Parties and other persons engaged in commerce or in industries affecting commerce to refuse to handle goods or perform services and threatened, restrained and coerced the Charging Parties, and other persons engaged in commerce, or in an industry affecting commerce, including Mannix Veterans.

u)      An object of the conduct described above in paragraphs 8(o) through 8(r), and 8(t) has been in part to force or require the Charging Parties and other persons engaged in commerce, or in an industry affecting commerce, including Mannix Veterans, to cease doing business with Kimco and GTL

v)      By the conduct described above in paragraphs 8(o) through 8(r), 8(t) and 8(u), Respondent has been violating Section 8(b)(4)(i) and (ii)(B) of the Act, 29 USC 158(b)(4)(i) and (ii)(B).

w)      The unfair labor practices of Respondents described above affect commerce within the meaning of Section 2(6) and (7) of the Act, 29 USC 158(b)(4)(i) and (ii)(B)..

x)      The acts and conduct of Respondent described above in paragraphs 8(n) through 8(w) have taken place in part within this judicial district.

9.      (a)      Absent immediate injunctive relief, Respondent's actions threaten to inflict irreparable harm on Charging Parties' business operations and impede the free flow of commerce.

(b)      The threat of further unlawful conduct from Respondent is tangible, as the labor dispute is ongoing, and there are allegations of continued placement of inflatable rats and picketing at the neutral Charging Parties' grocery stores. This illegal campaign has a deleterious effect on the neutral Charging Parties' business. The Board's final order will not effectively remedy these harms.

(c)      Respondent's actions threaten the neutral Charging Parties by impeding their ability to participate in interstate commerce enmeshing the neutral businesses in the primary labor dispute by forcing them to take sides on the dispute between Respondent and Kimco.

10.     Unless a temporary restraining order is immediately obtained, it can fairly be anticipated that Respondent will continue to repeat the acts and conduct set forth above in

7

paragraph 8 or similar or like acts and conduct violative of §8(b)(4)(i) and (ii)(B) of the Act, 29 USC 158(b)(4)(i) and (ii)(B). It is, therefore, essential, appropriate, just and proper, for purposes of effectuating the policies of the Act and in accordance with the provisions of §10(l), 29 USC 160(l), that pending final disposition of the matter herein involved now pending before the Board, Respondent be enjoined and restrained from the commission of the acts and conduct alleged above, and similar acts and conduct, or repetitions thereof.

11.    Upon information and belief, as more fully appears from the affidavits and documents attached hereto and made a part hereof, there is imminent danger that, before a hearing can be held on this Petition, immediate, substantial and irreparable injury will unavoidably result to the policies of the Act, to the Charging Parties, to employees and other persons not directly involved in the dispute herein, and to the flow of interstate commerce from a continuation of Respondent's unlawful conduct.

12.    There is no adequate remedy at law for the irreparable harm being caused by Respondent's unfair labor practices, as described above.

13.    Granting the temporary restraining order requested by Petitioner will cause no undue hardship to Respondent, as it remains free to engage in lawful activities.

14.    In balancing the equities in this matter, the harm to the employees involved herein, to the public interest in interstate commerce, and to the purposes and policies of the Act if immediate injunctive relief, as requested, is not granted, clearly outweighs any harm that the grant of such injunctive relief will work on Respondent.

15.    Upon information and belief, to avoid the serious consequences set forth above, it is essential, just, proper, and appropriate for the purposes of effectuating the policies of the Act and avoiding substantial, irreparable and immediate injury to such policies, to the public interest,

8

and the employees involved herein, and in accordance with the purposes of §10(l) of the Act, 29 USC 160(l), that, pending final disposition of the matters presently pending before the Board, Respondent be enjoined and restrained as herein prayed.

**WHEREFORE**, Petitioner prays:

1.      That the Court issue a Temporary Restraining Order forthwith enjoining and restraining Respondent, its officers, agents, representatives, servants, employees, attorneys, and all members and persons acting in concert or participation with them, for a period of five (5) days' duration from the date of that Order, as provided for in Rule 65(b) of the Federal Rules of Civil Procedure and pursuant to the provisions of the Act, from, in any manner or by any means, engaging in any picketing or other conduct, including the use of inflatable rats or cockroaches, with an object to induce or encourage individuals employed by Mannix Family Market @ Hylan Blvd LLC and Mannix Family Market @ Forest and Richmond Ave. LLC, and Mannix Family Markets @ Veterans Rd LLC, in Staten Island New York and other persons engaged in commerce or in industries affecting commerce to refuse to handle goods or perform services, in furtherance of Respondent's dispute with Kimco Realty Corp. (Kimco) and GTL Construction LLC (GTL); and threatening, restraining, or coercing any other person engaged in commerce, or in an industry affecting commerce, to cease handling, using, selling, transporting, or otherwise dealing in the products of, or to cease doing business with Kimco and GTL, or any other person engaged in commerce, or in an industry affecting commerce, or with each other.

2.      That, to assure compliance with the Court's Temporary Restraining Order, the Court directs service of said Order upon the United Stated Marshal for the Eastern District of New York, and further direct the United States Marshals Service to take those actions deemed necessary to enforce the provisions and prohibitions set forth in this Order.

3.      That the Court grant such other and further relief as may be just and proper.


DATED at Brooklyn, New York this 13th day of June, 2019.

Erin Schaefer
National Labor Relations Board
2 MetroTech Center, 5th Floor
Brooklyn, NY 11201
Telephone: (718) 765-6158
Email: Erin.Schaefer2@nlrb.gov
*Counsel for the Petitioner*

List of Exhibits

1. Charge filed May 9, 2019
2. Complaint and Notice of Hearing issued June 6, 2019
3. Amendment to Complaint issued June 11, 2019
4. Affidavit of Thomas Mannix dated May 13, 2019
5. Affidavit of Thomas Mannix dated May 15, 2019
6. Affidavit of Michael Koch
7. Affidavit of James Nappo
8. Affidavit of Ronny Thomas
9. Affidavit of Tony Martori
10. Affidavit of Lou Romagnano
11. Flyers handed out by Local 79

# EXHIBIT 1

FORM NLRB-508
(4-19)

FORM EXEMPT UNDER 44 U.S.C 3512

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
CHARGE AGAINST LABOR ORGANIZATION
OR ITS AGENTS

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case 29-CC-241297 | Date Filed 5/9/2019 |

INSTRUCTIONS: File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. LABOR ORGANIZATION OR ITS AGENTS AGAINST WHICH CHARGE IS BROUGHT

a. Name

John Green, President
Local 20
900 South Avenue, Suite 54
Staten Island, NY 10314
Phone: 718-568-4530  Fax: 718-568-4529

David Caraballoso, President
Local 212
395 Hudson Street, 1st Floor
New York, NY 10014
Phone: 646-201-9865  Fax: 212-574-3319

Mike Rodin, President
Local 45
New York City Carpenters Union
214-38 Hillside Ave
Queens Village, NY 11427
Phone: 718-464-6016  Fax: 718-464-6017

Anthony Vita, President
Local 79
520 8th Avenue, Suite 679
New York, NY 10018
Phone: 212-465-7976

b. Union Representative to contact

(See left)

c. Address (Street, city, state, and ZIP code)

(See above)

d. Tel. No.

e. Cell No.

f. Fax No.

g. e-mail

h. The above-named labor organizations have engaged in and are engaging in unfair labor practices within the meaning of section 8(b)(4) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices affecting commerce within the meaning of the Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)
Unlawful Secondary Boycotting. Respondent Unions have threatened, coerced and restrained (neutral) Employer with the object of forcing (neutral) Employer to cease doing business with another (primary) employer and/or forcing a (primary) employer to bargain with the Respondent Unions. During said conduct, Respondent Unions further engaged in making false and defamatory statements in handbills directed at (neutral) Employer. Additionally, (neutral) Employer is seeking injunctive relief under the Act.

| 3. Name of Employer | | 4a. Tel. No. | b. Cell No. | c. Fax No. |
|---|---|---|---|---|
| Mannix Family Market @ Hylan Blvd LLC 2424 Hylan Blvd. Staten Island, New York 10306 | Mannix Family Market @ Forest and Richmond Ave LLC 985 Richmond Avenue Staten Island, New York 10314 | 718-979-3303 | | |
| | | d. e-mail: Kevin.Mannix@wakefern.com | | |

| 5. Location of plant involved (street, city, state and ZIP code) | 6. Employer representative to contact |
|---|---|
| 985 Richmond Avenue Staten Island, New York 10314  2424 Hylan Blvd. Staten Island, New York 10306 | Robert M. Pettigrew, Esq. The Legal Center One Riverfront Plaza 1037 Raymond Boulevard, Suite 230 Newark, NJ 07102-5425. 201-368-7210 |

| 7. Type of establishment (factory, mine, wholesaler, etc.) Supermarkets | 8. Identify principal product or service Retail food sales | 9. Number of workers employed-750. |
|---|---|---|

10. Full name of party filing charge

White and Williams LLP

| 11 Address of party filing charge (street, city, state and ZIP code) | 11a. Tel. No. | b. Cell No. | c. Fax No. |
|---|---|---|---|
| One Riverfront Plaza 1037 Raymond Boulevard, Suite 230 Newark, NJ 07102-5425 | 201-368-7210 | 973-220-2148 | 201-368-7254 |
| | d. e-mail: pettigrewn@whiteandwilliams.com | | |

## 12. DECLARATION

I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

Signature of representative or person making charge)    Robert M. Pettigrew, Esq.

Address: See Box 11    Date: May 9, 2019

| Tel. No. 201-368-7210 |
|---|
| Cell No. 973-220-2148 |
| Fax No. 201-368-7254 |
| e-mail pettigrewn@whiteandwilliams.com |

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings of litigation. The routine uses for this information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information may cause the NLRB to decline to invoke its processes.

# EXHIBIT 2

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 29

CONSTRUCTION & GENERAL BUILDING
LABOERS' LOCAL 79, LABORERS
INTERNATIONAL UNION OF NORTH
AMERICA

                    RESPONDENT

And                                             Case No. 29-CC-241297

MANNIX FAMILY MARKET @ HYLAN BLVD
LLC

And

MANNIX FAMILY MARKET @ FOREST AND
RICMOND AVE. LLC

                    COMPLAINT AND NOTICE OF HEARING

This Complaint and Notice of Hearing is based on a charge filed by Mannix Family Market

@ Hylan Blvd LLC (Charging Party Hylan) and Mannix Family Market @ Forest and Richmond

Ave. LLC (Charging Party Richmond) (collectively Charging Parties).  It is issued pursuant to

Section 10(b) of the National Labor Relations Act (the Act), 29 U.S.C. § 151 et seq., and Section

102.15 of the Rules and Regulations of the National Labor Relations Board (the Board) and alleges

that Construction & General Building Laborers' Local 79, Laborers International Union of North

America (Respondent) has violated the Act as described below.

1.       The charge in this proceeding was filed by the Charging Parties on May 9, 2019,

and a copy was served on Respondent by U.S. mail on May 9, 2019.

2.       At all material times, Charging Party Hylan has been a limited liability corporation

with an office and place of business located at 2424 Hylan Boulevard, Staten Island, New York,

(Hylan Store) and has been engaged in the retail sale of groceries and related products.

1

3.      In conducting its business operations described above in paragraph 2, during the past 12 months, the Charging Party Hylan:

(a)     derived gross revenues in excess of $500,000; and

(b)     purchased and received goods valued in excess of $50,000 directly from enterprises located outside the State of New York.

4.      At all material times, Charging Party Hylan has been an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

5.      At all material times, Charging Party Richmond has been a limited liability corporation with an office and place of business located at 985 Richmond Avenue, Staten Island, New York, (Richmond Store) and has been engaged in the retail sale of groceries and related products.

6.      In conducting its business operations described above in paragraph 5, during the past 12 months, Charging Party Richmond:

(a)     derived gross revenues in excess of $500,000; and

(b)     purchased and received goods valued in excess of $50,000 directly from enterprises located outside the State of New York.

7.      At all material times, Charging Party Richmond has been an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

8.      At all material times, Mannix Family Market @ Veterans Road LLC (Mannix Veterans) has been a limited liability corporation with an office and place of business located at 3010 Veterans Road West, Staten Island, New York, (Veterans Store) and has been engaged in the retail sale of groceries and related products.

9.      In conducting its operations described above in paragraph 8, during the past 12 months, Mannix Veterans:

(a)     derived gross revenues in excess of $500,000; and

(b)     purchased and received goods valued in excess of $50,000 directly from enterprises located outside the State of New York.

10.     At all material times, Mannix Veterans has been an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

11.     At all material times, Respondent has been a labor organization within the meaning of Section 2(5) of the Act.

12.     At all material times, individuals whose identity is known to Respondent but presently unknown to the General Counsel engaged in activity on behalf of Respondent as described below in paragraphs 16 through 20 and have been agents of Respondent within the meaning of Section 2(13) of the Act.

13.     At all material times, Respondent has been engaged in a labor dispute with Kimco Realty Corp. (Kimco) and GTL Construction LLC (GTL).

14.     Wakefern Food Corp. is subject to a lease agreement with Kimco to lease space at a shopping center currently being constructed by GTL located at 2600 Hylan Boulevard, Staten Island, New York (Boulevard Project). Kevin Mannix, the majority owner and operator of Charging Party Hylan, Charging Party Richmond, and Mannix Veterans, entered into a sub-lease agreement with Wakefern Food Corp. to operate a grocery store at the Boulevard Project upon completion of construction.

15.     At no material time has Respondent been engaged in a labor dispute with Charging Party Hylan, Charging Party Richmond or Mannix Veterans.

16.     On or about April 29, 2019, and continuing on various dates thereafter, Respondent, by its agents, at the Charging Party's Hylan Store, erected multiple large inflatable rats adjacent to

3

the entrance of the store in support of Respondent's dispute with Kimco and GTL, described above in paragraph 13.

17.     On or about May 15, 2019, and continuing on various dates thereafter, Respondents, by their agents, erected an inflatable cockroach adjacent to an inflatable rat at the Charging Party's Hylan Store in support of Respondents' dispute with Kimco and GTL, described above in paragraph 13.

18.     On or about May 15, 2019, Respondent by its agents, at the Charging Party's Hylan Store, engaged in picketing, including blocking the sidewalk, using bullhorns to amplify shouting, distributing handbills, chanting, and blowing whistles, in support of Respondent's dispute with Kimco and GTL, described above in paragraph 13.

19.     On or about May 20, 2019, Respondents by its agents, at Veterans Store, erected a large inflatable rat adjacent to the entrance of the store in support of Respondent's dispute with Kimco and GTL, described above in paragraph 13.

20.     At various times between April 29, 2019, and continuing on various dates thereafter, while the inflatable rats and cockroach were erect, Respondent's agents distributed handbills to the public in connection with the actions described above in paragraphs 14 through 19, at the Charging Party's Hylan, Richmond, and Veterans Stores, which read, "SHOP RITE MANNIX SUPERMARKETS TELL KEVIN MANNIX TO MAKE THE RIGHT CHOICE AND PAY AREA STANDARDS WAGES AND BENEFITS TO THE CARPENTERES WORKING AT THE NEW SHOP RITE STORE AT THE BOULEVARD MALL" and "SHOP RITE MANNIX SUPERMARKETS TELL KEVIN TO DO THE RIGHT THING AND PAY AREA STANDARDS AT THE BOULEVARD MALL" and "Shame on your Kevin Mannix!!" in

4

addition to distributing other handbills, and in furtherance of the labor dispute described above in paragraph 13.

21.    By the conduct set forth above in paragraphs 15 through 19, Respondent has induced or encouraged individuals employed by Charging Parties and other persons engaged in commerce or in industries affecting commerce to refuse to handle goods or perform services and threatened, restrained and coerced the Charging Parties, and other persons engaged in commerce, or in an industry affecting commerce, including Mannix Veterans.

22.    An object of the conduct described above in paragraphs 15 through 19 and 21 has been in part to force or require the Charging Parties and other persons engaged in commerce, or in an industry affecting commerce, including Mannix Veterans, to cease doing business with Kimco and GTL

23.    By the conduct described above in paragraphs 15 through 19, 21 and 22, Respondent has been violating Section 8(b)(4)(i) and (ii)(B) of the Act.

24.    The unfair labor practices of Respondents described above affect commerce within the meaning of Section 2(6) and (7) of the Act.


## ANSWER REQUIREMENT

Respondent is notified that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and Regulations, it must file an answer to the complaint.  The answer must be **received by this office on or before June 20, 2019, or postmarked on or before June 19, 2019**.  Respondent should file an original and four copies of the answer with this office and serve a copy of the answer on each of the other parties.

An answer may also be filed electronically through the Agency's website.  To file electronically, go to www.nlrb.gov, click on **E-File Documents,** enter the NLRB Case Number, and follow the detailed instructions. The responsibility for the receipt and usability of the answer rests exclusively upon the sender.  Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason.  The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. See Section 102.21.  If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office. However, if the electronic version of an answer to a complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing.  Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations.   The answer may not be filed by facsimile transmission.  If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the complaint are true.

Any request for an extension of time to file an answer must, pursuant to Section 102.111(b) of the Board's Rules and Regulations, be received by close of business on June 19, 2019. The request should be in writing and addressed to the Regional Director of Region 29.

## NOTICE OF HEARING

PLEASE TAKE NOTICE THAT on **July 24, 2019, at 9:30 A.M. at a hearing room at Region 29 of the National Labor Relations Board, Suite 5100, Two MetroTech Center, Brooklyn, New York,** and on consecutive days thereafter until concluded, a hearing will be conducted before an administrative law judge of the National Labor Relations Board.  At the hearing, Respondent and any other party to this proceeding have the right to appear and present testimony regarding the allegations in this complaint.  The procedures to be followed at the hearing are described in the attached Form NLRB-4668.  The procedure to request a postponement of the hearing is described in the attached Form NLRB-4338.

Dated:  June 6, 2019

KATHY DREW-KING
REGIONAL DIRECTOR
NATIONAL LABOR RELATIONS BOARD
REGION 29
Two Metro Tech Center
Suite 5100
Brooklyn, NY 11201-3838

Attachments

7

FORM NLRB 4338
(6-90)

UNITED STATES GOVERNMENT
NATIONAL LABOR RELATIONS BOARD
**NOTICE**

Case 29-CC-241297

The issuance of the notice of formal hearing in this case does not mean that the matter cannot be disposed of by agreement of the parties. On the contrary, it is the policy of this office to encourage voluntary adjustments. The examiner or attorney assigned to the case will be pleased to receive and to act promptly upon your suggestions or comments to this end.

An agreement between the parties, approved by the Regional Director, would serve to cancel the hearing. However, unless otherwise specifically ordered, the hearing will be held at the date, hour, and place indicated. Postponements *will not be granted* unless good and sufficient grounds are shown *and* the following requirements are met:

(1) The request must be in writing. An original and two copies must be filed with the Regional Director when appropriate under 29 CFR 102.16(a) or with the Division of Judges when appropriate under 29 CFR 102.16(b).

(2) Grounds must be set forth in *detail*;

(3) Alternative dates for any rescheduled hearing must be given;

(4) The positions of all other parties must be ascertained in advance by the requesting party and set forth in the request; and

(5) Copies must be simultaneously served on all other parties (listed below), and that fact must be noted on the request.

Except under the most extreme conditions, no request for postponement will be granted during the three days immediately preceding the date of hearing.

Anthony Vita , President
Construction & General Building Laborers'
  Local 79, Laborers International Union of
  North America
520 Eighth Avenue Suite 650
New York, NY 10018

Robert M. Pettigrew , ESQ.
White and Williams LLP
One Riverfront Plaza
1037 Raymond Boulevard, Suite 230
Newark, NJ 07102-5425

Tamir Rosenblum , ESQ.
Mason Tenders District Council of Greater
  New York and Long Island
520 Eighth Avenue, Suite 650
New York, NY 10018-6539

Mannix Family Market @ Forest and
  Richmond Ave LLC
985 Richmond Ave
Staten Island, NY 10314-1501

Joseph J. Vitale , ESQ.
Cohen, Weiss and Simon, LLP
900 Third Avenue, Suite 2100
New York, NY 10022-4869

Mannix Family Market @ Hylan Blvd LLC
2424 Hylan Blvd
Staten Island, NY 10306-3117

Form NLRB-4668
(6-2014)

# Procedures in NLRB Unfair Labor Practice Hearings

The attached complaint has scheduled a hearing that will be conducted by an administrative law judge (ALJ) of the National Labor Relations Board who will be an independent, impartial finder of facts and applicable law. **You may be represented at this hearing by an attorney or other representative.** If you are not currently represented by an attorney, and wish to have one represent you at the hearing, you should make such arrangements as soon as possible. A more complete description of the hearing process and the ALJ's role may be found at Sections 102.34, 102.35, and 102.45 of the Board's Rules and Regulations. The Board's Rules and regulations are available at the following link: www.nlrb.gov/sites/default/files/attachments/basic-page/node-1717/rules_and_regs_part_102.pdf.

The NLRB allows you to file certain documents electronically and you are encouraged to do so because it ensures that your government resources are used efficiently. To e-file go to the NLRB's website at www.nlrb.gov, click on "e-file documents," enter the 10-digit case number on the complaint (the first number if there is more than one), and follow the prompts. You will receive a confirmation number and an e-mail notification that the documents were successfully filed.

**Although this matter is set for trial, this does not mean that this matter cannot be resolved through a settlement agreement.** The NLRB recognizes that adjustments or settlements consistent with the policies of the National Labor Relations Act reduce government expenditures and promote amity in labor relations and encourages the parties to engage in settlement efforts.

## I.     BEFORE THE HEARING

The rules pertaining to the Board's pre-hearing procedures, including rules concerning filing an answer, requesting a postponement, filing other motions, and obtaining subpoenas to compel the attendance of witnesses and production of documents from other parties, may be found at Sections 102.20 through 102.32 of the Board's Rules and Regulations. In addition, you should be aware of the following:

- **Special Needs:** If you or any of the witnesses you wish to have testify at the hearing have special needs and require auxiliary aids to participate in the hearing, you should notify the Regional Director as soon as possible and request the necessary assistance. Assistance will be provided to persons who have handicaps falling within the provisions of Section 504 of the Rehabilitation Act of 1973, as amended, and 29 C.F.R. 100.603.

- **Pre-hearing Conference:** One or more weeks before the hearing, the ALJ may conduct a telephonic prehearing conference with the parties. During the conference, the ALJ will explore whether the case may be settled, discuss the issues to be litigated and any logistical issues related to the hearing, and attempt to resolve or narrow outstanding issues, such as disputes relating to subpoenaed witnesses and documents. This conference is usually not recorded, but during the hearing the ALJ or the parties sometimes refer to discussions at the pre-hearing conference. You do not have to wait until the prehearing conference to meet with the other parties to discuss settling this case or any other issues.

## II.     DURING THE HEARING

The rules pertaining to the Board's hearing procedures are found at Sections 102.34 through 102.43 of the Board's Rules and Regulations. Please note in particular the following:

- **Witnesses and Evidence:** At the hearing, you will have the right to call, examine, and cross-examine witnesses and to introduce into the record documents and other evidence.

- **Exhibits:** Each exhibit offered in evidence must be provided in duplicate to the court reporter and a copy of each of each exhibit should be supplied to the ALJ and each party when the exhibit is offered

(OVER)

Form NLRB-4668
(6-2014)

in evidence. If a copy of any exhibit is not available when the original is received, it will be the responsibility of the party offering such exhibit to submit the copy to the ALJ before the close of hearing. If a copy is not submitted, and the filing has not been waived by the ALJ, any ruling receiving the exhibit may be rescinded and the exhibit rejected.

- **Transcripts:** An official court reporter will make the only official transcript of the proceedings, and all citations in briefs and arguments must refer to the official record. The Board will not certify any transcript other than the official transcript for use in any court litigation. Proposed corrections of the transcript should be submitted, either by way of stipulation or motion, to the ALJ for approval. Everything said at the hearing while the hearing is in session will be recorded by the official reporter unless the ALJ specifically directs off-the-record discussion. If any party wishes to make off-the-record statements, a request to go off the record should be directed to the ALJ.

- **Oral Argument:** You are entitled, on request, to a reasonable period of time at the close of the hearing for oral argument, which shall be included in the transcript of the hearing. Alternatively, the ALJ may ask for oral argument if, at the close of the hearing, if it is believed that such argument would be beneficial to the understanding of the contentions of the parties and the factual issues involved.

- **Date for Filing Post-Hearing Brief:** Before the hearing closes, you may request to file a written brief or proposed findings and conclusions, or both, with the ALJ. The ALJ has the discretion to grant this request and to will set a deadline for filing, up to 35 days.

## III.   AFTER THE HEARING

The Rules pertaining to filing post-hearing briefs and the procedures after the ALJ issues a decision are found at Sections 102.42 through 102.48 of the Board's Rules and Regulations. Please note in particular the following:

- **Extension of Time for Filing Brief with the ALJ:** If you need an extension of time to file a post-hearing brief, you must follow Section 102.42 of the Board's Rules and Regulations, which requires you to file a request with the appropriate chief or associate chief administrative law judge, depending on where the trial occurred. You must immediately serve a copy of any request for an extension of time on all other parties and furnish proof of that service with your request. You are encouraged to seek the agreement of the other parties and state their positions in your request.

- **ALJ's Decision:** In due course, the ALJ will prepare and file with the Board a decision in this matter. Upon receipt of this decision, the Board will enter an order transferring the case to the Board and specifying when exceptions are due to the ALJ's decision. The Board will serve copies of that order and the ALJ's decision on all parties.

- **Exceptions to the ALJ's Decision:** The procedure to be followed with respect to appealing all or any part of the ALJ's decision (by filing exceptions with the Board), submitting briefs, requests for oral argument before the Board, and related matters is set forth in the Board's Rules and Regulations, particularly in Section 102.46 and following sections. A summary of the more pertinent of these provisions will be provided to the parties with the order transferring the matter to the Board.

# EXHIBIT 3

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 29

CONSTRUCTION & GENERAL BUILDING
LABOERS' LOCAL 79, LABORERS
INTERNATIONAL UNION OF NORTH
AMERICA

**RESPONDENT**

And                                                    **Case No. 29-CC-241297**

MANNIX FAMILY MARKET @ HYLAN BLVD
LLC

And

MANNIX FAMILY MARKET @ FOREST AND
RICMOND AVE. LLC

**AMENDMENT TO COMPLAINT AND NOTICE OF HEARING**

On June 6, 2019, the Regional Director for Region 29 of the National Labor Relations Board

issued a Complaint and Notice of Hearing ("Complaint") in the above captioned case. Pursuant to

Section 102.17 of the Rules and Regulations of the National Labor Relations Board ("the Board")

the Complaint is amended as follows:

Substitute the following paragraph for Paragraph 1:

1.      The charge in this proceeding was filed by the Charging Parties on May 9, 2019,

and a copy was served on Respondent by U.S. mail on May 13, 2019.

Substitute the following paragraph for Paragraph 20:

20: At various times between April 29, 2019, and continuing on various dates thereafter,

while the inflatable rats and cockroach were erect, Respondent's agents distributed handbills to

the public in connection with the actions described above in paragraphs 14 through 19, at the

Charging Party's Hylan, Richmond, and Veterans Stores, which read, "Shame on your Kevin

1

Mannix!! Kevin Mannix Owner and Operator of 3 ShopRite grocery stores on Staten Island is allowing GTL Construction to exploit construction workers as 2600 Hyland [sic] Boulevard" in addition to distributing other handbills, and in furtherance of the labor dispute described above in paragraph 13.

### ANSWER REQUIREMENT

Respondent is notified that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and Regulations, it must file an answer to the Amendment to the Complaint. The answer must be **received by this office on or before June 25, 2019, or postmarked on or before June 24, 2019.** Respondent should file an original and four copies of the answer with this office and serve a copy of the answer on each of the other parties.

An answer may also be filed electronically through the Agency's website. To file electronically, go to www.nlrb.gov, click on **E-File Documents,** enter the NLRB Case Number, and follow the detailed instructions. The responsibility for the receipt and usability of the answer rests exclusively upon the sender. Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason. The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. See Section 102.21. If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office. However, if the electronic version of an answer to a complaint is not a pdf file

2

containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing.  Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations.  The answer may not be filed by facsimile transmission.  If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the Amendment to the Complaint are true.

Any request for an extension of time to file an answer must, pursuant to Section 102.111(b) of the Board's Rules and Regulations, be received by close of business on **June 24, 2019.** The request should be in writing and addressed to the Regional Director of Region 29.

## NOTICE OF HEARING

PLEASE TAKE NOTICE THAT on **July 30, 2019,** at **9:30AM,** at **Two MetroTech Center, Suite 5100, Brooklyn, New York,** and on consecutive days thereafter until concluded, a hearing will be conducted before an administrative law judge of the National Labor Relations Board.

3

At the hearing, Respondent and any other party to this proceeding have the right to appear and present testimony regarding the allegations in this complaint. The procedures to be followed at the hearing are described in the attached Form NLRB-4668. The procedure to request a postponement of the hearing is described in the attached Form NLRB-4338.

Dated: June 11, 2019

KATHY DREW-KING
REGIONAL DIRECTOR
NATIONAL LABOR RELATIONS BOARD
REGION 29
Two Metro Tech Center
Suite 5100
Brooklyn, NY 11201-3838

Attachments

4

FORM NLRB 4338
(6-90)

## UNITED STATES GOVERNMENT
### NATIONAL LABOR RELATIONS BOARD
# NOTICE

Case 29-CC-241297

The issuance of the notice of formal hearing in this case does not mean that the matter cannot be disposed of by agreement of the parties.  On the contrary, it is the policy of this office to encourage voluntary adjustments.  The examiner or attorney assigned to the case will be pleased to receive and to act promptly upon your suggestions or comments to this end.

An agreement between the parties, approved by the Regional Director, would serve to cancel the hearing.  However, unless otherwise specifically ordered, the hearing will be held at the date, hour, and place indicated.  Postponements *will not be granted* unless good and sufficient grounds are shown *and* the following requirements are met:

(1)  The request must be in writing. An original and two copies must be filed with the Regional Director when appropriate under 29 CFR 102.16(a) or with the Division of Judges when appropriate under 29 CFR 102.16(b).

(2)  Grounds must be set forth in *detail*;

(3)  Alternative dates for any rescheduled hearing must be given;

(4)  The positions of all other parties must be ascertained in advance by the requesting party and set forth in the request; and

(5)  Copies must be simultaneously served on all other parties (listed below), and that fact must be noted on the request.

Except under the most extreme conditions, no request for postponement will be granted during the three days immediately preceding the date of hearing.

Anthony Vita , President
Construction & General Building Laborers'
  Local 79, Laborers International Union of
  North America
520 Eighth Avenue Suite 650
New York, NY 10018

Robert M. Pettigrew , ESQ.
White and Williams LLP
One Riverfront Plaza
1037 Raymond Boulevard, Suite 230
Newark, NJ 07102-5425

Tamir Rosenblum , ESQ.
Mason Tenders District Council of Greater
  New York and Long Island
520 Eighth Avenue, Suite 650
New York, NY 10018-6539

Mannix Family Market @ Forest and
  Richmond Ave LLC
985 Richmond Ave
Staten Island, NY 10314-1501

Joseph J. Vitale , ESQ.
Cohen, Weiss and Simon, LLP
900 Third Avenue, Suite 2100
New York, NY 10022-4869

Mannix Family Market @ Hylan Blvd LLC
2424 Hylan Blvd
Staten Island, NY 10306-3117

Form NLRB-4668
(6-2014)

# Procedures in NLRB Unfair Labor Practice Hearings

The attached complaint has scheduled a hearing that will be conducted by an administrative law judge (ALJ) of the National Labor Relations Board who will be an independent, impartial finder of facts and applicable law. **You may be represented at this hearing by an attorney or other representative.** If you are not currently represented by an attorney, and wish to have one represent you at the hearing, you should make such arrangements as soon as possible. A more complete description of the hearing process and the ALJ's role may be found at Sections 102.34, 102.35, and 102.45 of the Board's Rules and Regulations. The Board's Rules and regulations are available at the following link: www.nlrb.gov/sites/default/files/attachments/basic-page/node-1717/rules_and_regs_part_102.pdf.

The NLRB allows you to file certain documents electronically and you are encouraged to do so because it ensures that your government resources are used efficiently. To e-file go to the NLRB's website at www.nlrb.gov, click on "e-file documents," enter the 10-digit case number on the complaint (the first number if there is more than one), and follow the prompts. You will receive a confirmation number and an e-mail notification that the documents were successfully filed.

**Although this matter is set for trial, this does not mean that this matter cannot be resolved through a settlement agreement.** The NLRB recognizes that adjustments or settlements consistent with the policies of the National Labor Relations Act reduce government expenditures and promote amity in labor relations and encourages the parties to engage in settlement efforts.

## I.     BEFORE THE HEARING

The rules pertaining to the Board's pre-hearing procedures, including rules concerning filing an answer, requesting a postponement, filing other motions, and obtaining subpoenas to compel the attendance of witnesses and production of documents from other parties, may be found at Sections 102.20 through 102.32 of the Board's Rules and Regulations. In addition, you should be aware of the following:

- **Special Needs:** If you or any of the witnesses you wish to have testify at the hearing have special needs and require auxiliary aids to participate in the hearing, you should notify the Regional Director as soon as possible and request the necessary assistance. Assistance will be provided to persons who have handicaps falling within the provisions of Section 504 of the Rehabilitation Act of 1973, as amended, and 29 C.F.R. 100.603.

- **Pre-hearing Conference:** One or more weeks before the hearing, the ALJ may conduct a telephonic prehearing conference with the parties. During the conference, the ALJ will explore whether the case may be settled, discuss the issues to be litigated and any logistical issues related to the hearing, and attempt to resolve or narrow outstanding issues, such as disputes relating to subpoenaed witnesses and documents. This conference is usually not recorded, but during the hearing the ALJ or the parties sometimes refer to discussions at the pre-hearing conference. You do not have to wait until the prehearing conference to meet with the other parties to discuss settling this case or any other issues.

## II.     DURING THE HEARING

The rules pertaining to the Board's hearing procedures are found at Sections 102.34 through 102.43 of the Board's Rules and Regulations. Please note in particular the following:

- **Witnesses and Evidence:** At the hearing, you will have the right to call, examine, and cross-examine witnesses and to introduce into the record documents and other evidence.

- **Exhibits:** Each exhibit offered in evidence must be provided in duplicate to the court reporter and a copy of each of each exhibit should be supplied to the ALJ and each party when the exhibit is offered

(OVER)

Form NLRB-4668
(6-2014)

in evidence. If a copy of any exhibit is not available when the original is received, it will be the responsibility of the party offering such exhibit to submit the copy to the ALJ before the close of hearing. If a copy is not submitted, and the filing has not been waived by the ALJ, any ruling receiving the exhibit may be rescinded and the exhibit rejected.

- **Transcripts**: An official court reporter will make the only official transcript of the proceedings, and all citations in briefs and arguments must refer to the official record. The Board will not certify any transcript other than the official transcript for use in any court litigation. Proposed corrections of the transcript should be submitted, either by way of stipulation or motion, to the ALJ for approval. Everything said at the hearing while the hearing is in session will be recorded by the official reporter unless the ALJ specifically directs off-the-record discussion. If any party wishes to make off-the-record statements, a request to go off the record should be directed to the ALJ.

- **Oral Argument**: You are entitled, on request, to a reasonable period of time at the close of the hearing for oral argument, which shall be included in the transcript of the hearing. Alternatively, the ALJ may ask for oral argument if, at the close of the hearing, if it is believed that such argument would be beneficial to the understanding of the contentions of the parties and the factual issues involved.

- **Date for Filing Post-Hearing Brief**: Before the hearing closes, you may request to file a written brief or proposed findings and conclusions, or both, with the ALJ. The ALJ has the discretion to grant this request and to will set a deadline for filing, up to 35 days.

## III.   AFTER THE HEARING

The Rules pertaining to filing post-hearing briefs and the procedures after the ALJ issues a decision are found at Sections 102.42 through 102.48 of the Board's Rules and Regulations. Please note in particular the following:

- **Extension of Time for Filing Brief with the ALJ:** If you need an extension of time to file a post-hearing brief, you must follow Section 102.42 of the Board's Rules and Regulations, which requires you to file a request with the appropriate chief or associate chief administrative law judge, depending on where the trial occurred. You must immediately serve a copy of any request for an extension of time on all other parties and furnish proof of that service with your request. You are encouraged to seek the agreement of the other parties and state their positions in your request.

- **ALJ's Decision:** In due course, the ALJ will prepare and file with the Board a decision in this matter. Upon receipt of this decision, the Board will enter an order transferring the case to the Board and specifying when exceptions are due to the ALJ's decision. The Board will serve copies of that order and the ALJ's decision on all parties.

- **Exceptions to the ALJ's Decision**: The procedure to be followed with respect to appealing all or any part of the ALJ's decision (by filing exceptions with the Board), submitting briefs, requests for oral argument before the Board, and related matters is set forth in the Board's Rules and Regulations, particularly in Section 102.46 and following sections. A summary of the more pertinent of these provisions will be provided to the parties with the order transferring the matter to the Board.

# EXHIBIT 4

Construction & General Building Laborers
Local 79, et al.
Case   29-CC-241297

## Confidential Witness Affidavit

I, <u>Thomas Mannix</u> , being first duly sworn upon my oath, state as follows:

**I have been given assurances by an agent of the National Labor Relations Board (NLRB) that this Confidential Witness Affidavit will be considered a confidential law enforcement record by the NLRB and will not be disclosed unless it becomes necessary to produce this Confidential Witness Affidavit in connection with a formal proceeding.**

My work address is: 2424 Hylan Blvd., Staten Island, NY 10306

My work telephone number (including area code) is:

My cell phone number (including area code) is: ███████

My e-mail address is: ███████████

I am employed by      Mannix Family Market d/b/a ShopRite

  located at      2424 Hylan Blvd., Staten Island, NY

1    I am employed as Director of Security, Safety and Environmental for Mannix Family

2    Market ("Mannix" or "Employer").  The Employer operates three ShopRite supermarkets in

3    Staten Island, New York, including one supermarket at 2424 Hylan Blvd., ("Hylan Store") and

4    another located at 985 Richmond Avenue ("Richmond Store").  My job duties as Director of

5    Security, Safety and Environmental include overseeing security at the Employer's three

6    supermarkets and ensuring that the premises are properly secured and monitored by others.  I

7    also organize, conduct and lead safety meetings to educate staff members on best safety practices

8    and review past incidents to ensure that similar safety hazards are not repeated. On the

**Privacy Act Statement**
The NLRB is asking you for the information on this form on the authority of the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the NLRB in processing representation and/or unfair labor practice cases and related proceedings or litigation.  The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006).  Additional information about these uses is available at the NLRB website, www.nlrb.gov.  Providing this information to the NLRB is voluntary.  However, if you do not provide the information, the NLRB may refuse to continue processing an unfair labor practice or representation case, or may issue you a subpoena and seek enforcement of the subpoena in federal court.

Initials   TcM

| Cases 29-CC-241297 | | | Confidential Witness Affidavit |

1   environmental side, I am responsible for overseeing the Employer's trash disposal and recycling

2   to help ensure that the Employer remains in compliance with all local environmental laws and

3   regulations.

4         On about April 29, 2019, I received a phone call from Mannix District Manager Mike

5   Koch, who informed me that several men representing a labor union had set themselves up on

6   the sidewalk in front of the Hylan Store and had inflatable rats. I decided to come to the Hylan

7   Store and investigate the situation. When I arrived on April 29 at about 8:25 a.m., I saw three

8   men on the sidewalk of Hylan Blvd. about ~~100 yards~~ 70 yards [FEM] from the doorway entrance of the Store and

9   about 15 feet from the traffic intersection leading directly into the Store's parking lot. The men

10   stood next to one inflated rat at the time I first observed them. The rat had a flyer affixed to its

11   stomach area. The flyer said in big bold print at the top, "Shame on You Kevin Mannix!!" and

12   contained a message about how the Employer was allowing Kimco Realty Corp and GTL

13   Construction build our new supermarket using "exploited construction workers." Kevin Mannix

14   is my brother and the President/Owner of the Employer's business. I approached the three men

15   on the sidewalk. At some point during our conversation a fourth man who was with the other

16   three men came and joined us. When I approached, I explained my position with Mannix. The

17   men explained that they were there in protest of the fact that there was a construction site down

18   the street that was building a new store for Mannix using non-union labor. I explained that

19   Mannix was not involved in the construction at that site and that we were merely a tenant of the

20   new shopping center being built at that location. I also told the men that Mannix is a union shop

21   and that we employ only union-represented workers at the Hylan Store and that once the location

22   of the Hylan Store moves to the new shopping center, we would be the only union shop

Initials: FEM

| Cases 29-CC-241297 | | Confidential Witness Affidavit |
|---|---|---|

1    operating at that shopping center.  The men said that they did not care and were going to stay

2    there to protest.

3          I asked the men if they had parked any of their cars in the Mannix parking lot, and they

4    said they had not parked on our property.  I later went into the Store and reviewed surveillance

5    video footage that showed the men had parked at least two cars on our property.  After I

6    discovered this, I went back out to the men and told them that they could not park on our

7    property.  I identified the two cars that I observed on the surveillance footage, and asked them to

8    remove the cars.  The men refused.  I then called the police and reported that the men had parked

9    on our property, even though they were not customers and I had asked them to leave.  The police

10   came a while later, I observed them speaking with the men for several minutes.  About 10

11   minutes later, I observed the men remove their cars from the Mannix lot.  I did not have any

12   other interaction with these men on April 29.  I observed them positioned on the sidewalk with

13   their inflated rat for several hours more, until about 2 p.m.

14         At some point in the morning on April 29, probably about 9:30 am, the Employer's Head

15   of Maintenance Jimmy Nappo went out to the area near where the men were with their rat in

16   order to clean the area and ensure that the men did not leave litter or any other materials there.  I

17   do not believe that Jimmy is a supervisor or manager at the Hylan Store.  He is a rank-and-file

18   employee, as far as I understand.  He is responsible for overseeing the overall maintenance of the

19   Store.  I observed Jimmy go out to the area near where the men with the rat were.  I did not send

20   him to that area at that time, but rather he went on his own accord, in connection with his job

21   duties.  I did not watch Jimmy's interaction with the men.  About 10-15 minutes after I saw

22   Jimmy go out to the area, I saw him come back to the Store.  Jimmy came and spoke to me about

23   his interaction with the men outside with the rat.  He said he couldn't believe what the men had

Initials:  T≠M

| Cases 29-CC-241297 | | | Confidential Witness Affidavit |
|---|---|---|---|

1    just said to him.  He said that men told him that Mannix did not intend to use union workers at

2    the Hylan Store once it opened up at the new location in the shopping center under construction.

3    Jimmy said he told the men that what they were saying was not true because he knew that

4    Employer intended to bring the same workers at the current Hylan Store over to the new store,

5    and that the Employer intended to keep recognizing the Union as these employees' bargaining

6    representative.  Jimmy said that another one of the men – not the one who had made the

7    comment about Mannix not hiring union workers at the new store location – said that the one

8    who made the comment was misinformed and that it was in fact not true that Mannix intended

9    not to use union workers at the new location.  Jimmy expressed surprise at the whole interaction

10   with these men.  I do not recall anything else that Jimmy related to me regarding his interaction

11   with the men with the rat on April 29.  I do not recall what, if anything, I said to Jimmy when he

12   related these things to me.

13         I visit the Hylan Store during the day on most weekdays (Monday – Friday).  I estimate

14   that I go to the Hylan Store about 3 to 5 weekdays per week every week.  Since April 29, I have

15   seen men positioned with at least one inflated rat on the sidewalk on Hylan Blvd., in the location

16   described above, every weekday when I have come to the Hylan Store.  I do not believe that the

17   men erect their rats during weekends because I have received reports from our security personnel

18   stating that there were no rats out there on weekends, and I have remotely checked security

19   footage from the area taken on certain weekend days, and I saw that there was no rat erected at

20   the times when I checked the footage.

21         What I have observed at the Hylan Store since April 29 is not the first time I observed

22   men making demonstrations in protest of the workers being used by third party employers at the

23   construction site for the new shopping center on Hyland Blvd.  In about late fall, or early

- 4 -                                    Initials: ___TFM___

| Cases 29-CC-241297 | | Confidential Witness Affidavit |
|---|---|---|

1  December 2018, I first observed at our Richmond Store a large van parked across Richmond

2  Avenue from the Richmond Store. The body of the van displayed a digital screen with images

3  on it. The image I saw displayed in about early December 2018 had the words "SHOP RITE

4  MANNIX SUPERMARKETS" in big bold letters at the top, followed by smaller print, which

5  said "TELL KEVIN MANNIX TO MAKE THE RIGHT CHOICE AND PAY AREA

6  STANDARD WAGES AND BENEFITS TO THE CARPENTERS WORKING AT THE NEW

7  SHOP RITE STORE AT THE BOULEVARD MALL." When I first observed the van parked

8  across the street from our store, I called the Community Affairs office of our local police

9  precinct in order to ensure that the van was legally parked in that spot. I asked the police to

10  make sure that the van was not blocking the bike lanes and were otherwise lawfully parked. The

11  officer I spoke with said the precinct would have someone look into it. I did not take any further

12  action in response to seeing the van parked across the street.

13      Several days later, still in about early December 2018, I was visiting another business on

14  New Dorp Lane at Hylan Blvd. in Staten Island, about ½ to ¾ mile away from the current Hylan

15  Store. As I walked towards the business I was visiting, I saw two men walking up New Dorp

16  Lane handing out flyers to passersby. I did not observe these men patrolling or pacing in any

17  one particular place. Rather, I saw them walking up New Dorp Lane, kind of canvassing the

18  area, passing out their flyer. One of the men handed me a flyer as I passed by. The flyer had a

19  ShopRite logo at the top of the page inside a circle with a diagonal line cutting through the logo.

20  Below the crossed-out logo was the same written message that I had seen displayed on the body

21  of the van parked across from the Richmond Store, as described above. I did not say anything to

22  these men who were passing out the flyer. I did not recognize them, and I do not believe I had

- 5 -                    Initials: TFM

| Cases 29-CC-241297 | | | Confidential Witness Affidavit |
|---|---|---|---|

1   ever seen them before or since.  I just took the flyer and continued with what I was doing at the

2   time.

3   ///

4   ///

5   ///

I have been given a copy of this Confidential Witness Affidavit. I understand that this
affidavit is a confidential law enforcement record and should not be shown to any person
other than my attorney or other person representing me in this proceeding.

I have read this Confidential Witness Affidavit consisting of six (6) pages, including this
page, I fully understand it, and I state under penalty of perjury that it is true and correct.
However, if after reviewing this affidavit again, I remember anything else that is important
or I wish to make any changes, I will immediately notify the Board agent.

Date:   May 13, 2019 _____        Signature: _____

Thomas Mannix

Signed and sworn to before me on _____ May 13, 2019 at

Brooklyn, New York_____

Matthew A. Jackson
Field Attorney
National Labor Relations Board
Region 29

Initials: TFM

# EXHIBIT 5

Construction & General Building Laborers
Local 79, et al.
Case   29-CC-241297

## Confidential Witness Affidavit

I,   **Thomas Mannix**   , being first duly sworn upon my oath, state as follows:

I have been given assurances by an agent of the National Labor Relations Board (NLRB) that this Confidential Witness Affidavit will be considered a confidential law enforcement record by the NLRB and will not be disclosed unless it becomes necessary to produce this Confidential Witness Affidavit in connection with a formal proceeding.

My work address is:  2424 Hylan Boulevard, Staten Island, NY 10306

My work telephone number (including area code) is:

My cell phone number (including area code) is: ████████████

My e-mail address is: ████████████████

I am employed by    Mannix Family Market d/b/a ShopRite

located at    2424 Hylan Boulevard, Staten Island, NY

1    This affidavit supplements the statement I provided to the Labor Board on May 13, 2019.

2    There have been new developments at the Hylan Store that Mannix Family Market ("Employer"

3    or "Mannix") believes provide more evidence that Laborers Local 79 is engaged in unlawful

4    secondary picketing at the Hylan Store.

5    Today, May 15, 2019, I arrived at the Hylan Store at about 8:00 a.m., and I observed as I

6    was pulling into the parking lot a similar demonstration conducted by agents of Local 79 as what

7    Local 79 had been staging every weekday since April 29, as I testified previously. When I

8    pulled into the parking lot this morning, I saw four men standing on the public sidewalk directly

**Privacy Act Statement**
The NLRB is asking you for the information on this form on the authority of the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the NLRB in processing representation and/or unfair labor practice cases and related proceedings or litigation.  The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). Additional information about these uses is available at the NLRB website, www.nlrb.gov.  Providing this information to the NLRB is voluntary.  However, if you do not provide the information, the NLRB may refuse to continue processing an unfair labor practice or representation case, or may issue you a subpoena and seek enforcement of the subpoena in federal court.

Initials   TFM

| Cases 29-CC-241297 | | Confidential Witness Affidavit |
|---|---|---|

1  in front of the entrance to the parking lot, and they stood beside a large inflated rat. The rat is

2  about 10 feet tall, maybe more. The men were not making any noise at the time, and I observed

3  them standing more or less in one place.

4      At about 12:00 pm today, I received a phone call from our security supervisor Jerry, who

5  told me that the Local 79 demonstration had grown since the morning and that there were many

6  more people on the street outside of the Hylan Store. I then went outside to observe the situation

7  myself. Once I got downstairs from my office, before I even got outside, I heard from inside the

8  Store loud noises, including chanting and someone shouting into a bullhorn. When I got outside,

9  I stood inside the Store parking, and I observed between 20 and 25 people (almost all of them

10 were men) gathered in the same area where I had seen the four men with the inflated rat earlier in

11 the morning. The group took up the entire portion of the sidewalk leading into that portion of the

12 Store's parking lot such that if a person were walking up that street making his/her way into our

13 Store, then they would have to go out of their way to walk around the group of demonstrators.

14 However, I did not see any pedestrian come up that part of the street coming towards the Store

15 during this demonstration. Some of the people in the group of demonstrators were leaning

16 against the fence of our parking lot. They generally stood in the same place as they conducted

17 their demonstration. I did not observe any members of the group pace back and forth. I saw that

18 many members of the group were wearing personal protection equipment commonly worn on

19 construction sites. I did not see whether they were wearing any Local 79 insignia or the insignia

20 of another labor union.

21     In addition to the large inflated rat, the group had erected another large inflated figure

22 that resembled a cockroach. The cockroach was the same height as the rat.

- 2 -

Initials: _TEM_____

| Cases 29-CC-241297 | | Confidential Witness Affidavit |
|---|---|---|

1    The group of demonstrators were chanting as they stood on the sidewalk, and two of the

2    demonstrators had bullhorns. The demonstrators with the bullhorns shouted into the bullhorn

3    and lead the others in their chants. In addition, multiple individuals in the group had whistles,

4    and they repeatedly blew into the whistles, making loud noises.

5    I heard the demonstrators making five different chants. In one of the chants, the

6    demonstrators shouted "Union Labor" over and over again. Another chant was a call and

7    response between one of the demonstrators with a bullhorn and the rest of the crowd, in which

8    the leader shouted, "What do we want?!" and the crowd shouted back, "Union jobs!" The call

9    and response chant continued with the leader with the bullhorn yelled, "When do we want it?!"

10   and the crowd would respond "Now!" Another chant I heard involved a demonstrator with a

11   bullhorn shouting repeatedly, "We beat 9 injunctions before!" In addition, there was another call

12   and response chant in which the leader with the bullhorn shouted, "If we don't get it," and the

13   crowd responded, "Shut it down!" Finally, I also observed the demonstrators chanting, "Stand

14   up! Fight back!" over and over again. The whistles were blowing more or less continuously

15   while the chanting was happening.

16   I stayed outside to observe the demonstration for several minutes, and the chanting and

17   noise-making continued throughout the time I was there. I went back inside the Store and

18   continued to hear the chants and noises from inside. I went to the security guard station and

19   monitored the demonstration from the live-feed from the surveillance cameras that were on

20   display on the monitors at the security station. I observed the same demonstration that I saw

21   outside and described above on the monitors. I went back outside the Store several times during

22   the demonstration and each time I saw the demonstrators engaged in the same conduct, more or

23   less. The demonstration continued from about 12:00 pm until about 1:00 pm. At about 1:00, the

Initials: TFM

| Cases 29-CC-241297 | | | Confidential Witness Affidavit |
|---|---|---|---|

1   entire group packed up their belongings, including the inflated rat and cockroach, and they all

2   left the area. By 1:15pm, the entire street was clear, and the demonstration was over.

3   ///

4   ///

5   ///.

I have been given a copy of this Confidential Witness Affidavit. I understand that this affidavit is a confidential law enforcement record and should not be shown to any person other than my attorney or other person representing me in this proceeding.

I have read this Confidential Witness Affidavit consisting of four (4) pages, including this page, I fully understand it, and I state under penalty of perjury that it is true and correct. However, if after reviewing this affidavit again, I remember anything else that is important or I wish to make any changes, I will immediately notify the Board agent.

Date:   May 15, 2019          Signature: _____
                                                          Thomas Mannix

Signed and sworn to before me on _____May 15, 2019_____ at

Brooklyn, New York_____

_____
Matthew A. Jackson
Field Attorney
National Labor Relations Board
Region 29

- 4 -                    Initials: _____

# EXHIBIT 6

Construction & General Building Laborers
Local 79, et al.
Case   29-CC-241297

## Confidential Witness Affidavit

I, __Michael Koch__, being first duly sworn upon my oath, state as follows:

I have been given assurances by an agent of the National Labor Relations Board (NLRB) that this Confidential Witness Affidavit will be considered a confidential law enforcement record by the NLRB and will not be disclosed unless it becomes necessary to produce this Confidential Witness Affidavit in connection with a formal proceeding.

My work address is: 985 Richmond Avenue, Staten Island, NY 10314

My work telephone number (including area code) is:

My cell phone number (including area code) is: ██████████

My e-mail address is: ██████████████

I am employed by      Mannix Family Market d/b/a ShopRite

located at      985 Richmond Avenue, Staten Island, NY

1       I am employed as District Manager for Mannix Family Market ("Mannix" or

2       "Employer"). The Employer operates three ShopRite supermarkets in Staten Island, New York,

3       including one supermarket at 2424 Hylan Blvd., ("Hylan Store") and another located at 985

4       Richmond Avenue ("Richmond Store"). My job duties as District Manager include overseeing

5       daily operations at all three of the Employer's supermarket and reporting on operations issues to

6       Employer owner Kevin Mannix.

7            In about early December 2018, I received a phone call from my Loss Prevention Officer

8       Al stating that there was a man from a labor union outside the Richmond Store passing out flyers

**Privacy Act Statement**
The NLRB is asking you for the information on this form on the authority of the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the NLRB in processing representation and/or unfair labor practice cases and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). Additional information about these uses is available at the NLRB website, www.nlrb.gov. Providing this information to the NLRB is voluntary. However, if you do not provide the information, the NLRB may refuse to continue processing an unfair labor practice or representation case, or may issue you a subpoena and seek enforcement of the subpoena in federal court.

- 1 -                                          Initials _MC_

| Cases 29-CC-241297 | | | Confidential Witness Affidavit |

1   to people who passed by.  When I received the news I immediately went over to the Richmond

2   Store.  As I drove into the parking lot of the Store, I saw one man standing on the sidewalk on

3   along the fence line of the Richmond Store with a stack of flyers speaking to another person and

4   handing the person a flyer.  I believe the man was standing in one place while he distributed his

5   flyers.  I did not see the man block or impede the entrance to the Store.  After I saw the man

6   speaking to a passerby and handing out a flyer, I continued driving into the parking lot.  By the

7   time I had parked my car and began walking towards the entrance of the Store, I saw the man

8   packing up his things and leaving his position on the sidewalk.  I then continued into the Store.

9   Someone inside showed me a copy of the flyer the man outside had been handing out.  The flyer

10  stated "SHOP RITE MANNIX SUPERMARKETS" at the top and below that contained a

11  message encouraging people to tell Kevin Mannix to pay area standard wages and benefits to

12  carpenters working at a construction site for a new Mannix store.  When I first saw the flyer, I

13  did not know what it was about.  Certain employees at Mannix supermarkets on Staten Island are

14  represented by United Food and Commercial Workers, Local 1500.  I called my contact at Local

15  1500 and told him that someone from another union had been outside the Richmond Store

16  distributing flyers against Mannix.  The Local 1500 representative asked me to send him a copy

17  of the flyer, and I did so right away.

18          Several hours later, I observed from the parking lot of the Richmond Store a large van

19  parked across Richmond Avenue.  The van had on the side of its body a large screen that

20  displayed an image displaying the words "SHOP RITE MANNIX SUPERMARKETS" in large

21  print at the top of the display, as well as a ShopRite logo inside a circle with a diagonal line

22  going through the logo, and a message asking people to tell Kevin Mannix to pay area standard

23  wages and benefits to carpenters working at the new ShopRite store.  When I first saw this

-2-

Initials: _____

| Cases 29-CC-241297 | | | Confidential Witness Affidavit |
|---|---|---|---|

1     display, I again did not know what it was about. I called my contact at Local 1500 again when I

2     saw the van. The Local 1500 representative told me he did not know what the display was about,

3     either, but he said that he would look into it and get back to me.

4          About two days later, I received a call from a representative of Carpenters Local 20, I

5     believe his name was Lou (last name unknown). Lou explained that Local 20 has sent the van

6     with the digital billboard to the Richmond Store and that Local 20 was also behind the flyers that

7     were being distributed on the sidewalk outside the Richmond Store that day in early December

8     described above. Lou said that the reason Local 20 had sent the van was that the construction of

9     a new shopping center at which Mannix had agreed to be a tenant was proceeding using non-

10    union labor. Lou said that he wanted the construction to proceed with Local 20 members doing

11    the work. I told Lou that Mannix has no control over the construction of the shopping center, as

12    we were just going to be tenants when the new facility opened. I explained that Mannix is not

13    involved in the construction work, and could not do anything to get Local 20 members employed

14    at the site. Lou asked if there was anything I could do to help him get Local 20 members

15    employed there, and I said that I would pass along his information to my contact for the

16    construction site developer. Lou said that would be good, and he thanked me. That was the end

17    of our phone conversation. Several days later, after I had received Lou's business card from my

18    contact from Local 1500, I delivered the card to the site manager at the construction site, and the

19    site manager said that he was already aware of who Lou was.

20         I either directly observed or received reports from my Loss Prevention Officer Al that the

21    van with the digital billboard was parked in the same spot across the street from the Richmond

22    Store multiple times per week, every week between the time I first saw it there in early

23    December until about mid-February 2019.

- 3 -

Initials: _____

| Cases 29-CC-241297 | | | Confidential Witness Affidavit |
|---|---|---|---|

1      I am not aware of the van being parked there between mid-February and May 2019.

2    However, during a weekday about the first week of May 2019, approximately May 3, I received

3    another report from my Loss Prevention Officer about the van returning. Al informed me that

4    the van was parked in the same spot it had been in previously, but this time the digital billboard

5    displayed different images on a rotating basis. I asked Al to take photos of the different images

6    being shown on the van and to send them to me. Al sent me the photos a short while thereafter.

7    A few hours later, I proceeded to drive over to the Richmond Store in order to see what was

8    happening for myself, but by the time I got there, the van was gone. I did not see directly the van

9    parked outside the Richmond Store on about May 3. However, I did see pictures of the van that

10    AL ~~took and~~ sent over to me. The pictures of the billboards displayed on the van did not appear

11    to identify which union was behind the billboards. I do not know which union orchestrated the

12    billboards outside the Richmond Store on about May 3.

13      On about Monday, April 29 (I definitely recall that it was a Monday in late April), I was

14    at the Hylan Store and observed two men positioned on the sidewalk about 50 to 60 yards away

15    from the entrance to the Store and an even shorter distance from the entrance to the parking lot.

16    The men were wearing sweatshirts that said "Local 79" on them, and they sat next to a large

17    inflated rat with a flyer taped to its stomach area. The flyer read in big bold print at the top,

18    "Shame on You Kevin Mannix!!" and went on to accuse Mannix of allowing "exploited

19    construction workers" to build the new shopping center where Mannix will be opening our new

20    store. Hylan Store Manager Ronny Thomas informed me that he had already spoken with the

21    men with the inflated rat and let them know that Mannix had nothing to do with the work at the

22    construction site. Because Ronny had already addressed the matter with the men with the rat, I

23    decided not to engage with them further. I have seen men from Local 79 with anywhere from

- 4 -    Initials: _____

| Cases 29-CC-241297 | | Confidential Witness Affidavit |
|---|---|---|

1    one to three inflated rats at the same spot near the entrance to the Hylan Store on every week day

2    that I visited the Hylan Store since I first saw the rat on about April 29.

3          Mannix is not involved in the construction of the new shopping center on Hylan Blvd.

4    Our parent company, Wakefern, has a contract with the developer of the site, Kimco Realty

5    Corp. to lease space for a supermarket at the new shopping center.  I understand that Kimco has

6    hired a company called GTL Construction as its general contractor in charge of building at the

7    site.  The only involvement Mannix has with the construction of the new facility is that we have

8    supplied Kimco with broad, general specifications concerning how to build the supermarket.

9    After the exterior and portions of the interior of the building are constructed, Mannix will bring

10   in our own general contractors and construction specialists to finish the interior.  The general

11   contractors and specialists with who we have contracted to do this work all use union labor.

12   *///*

**I have been given a copy of this Confidential Witness Affidavit.  I understand that this
affidavit is a confidential law enforcement record and should not be shown to any person
other than my attorney or other person representing me in this proceeding.**

**I have read this Confidential Witness Affidavit consisting of five (5) pages, including this
page, I fully understand it, and I state under penalty of perjury that it is true and correct.
However, if after reviewing this affidavit again, I remember anything else that is important
or I wish to make any changes, I will immediately notify the Board agent.**

Date:   May 14, 2019          Signature:   _____
                                                        Michael Koch

**Signed and sworn to before me on _____ May 14, 2019 at**

**Brooklyn, New York**

Matthew A. Jackson
Field Attorney
National Labor Relations Board
Region 29

- 5 -

Initials: _____

# EXHIBIT 7

Construction & General Building Laborers
Local 79, et al.
Case    29-CC-241297

## Confidential Witness Affidavit

**I, <u>James Nappo</u>, being first duly sworn upon my oath, state as follows:**

**I have been given assurances by an agent of the National Labor Relations Board (NLRB) that this Confidential Witness Affidavit will be considered a confidential law enforcement record by the NLRB and will not be disclosed unless it becomes necessary to produce this Confidential Witness Affidavit in connection with a formal proceeding.**

My home address is: ████████ ████████████████████

My home telephone number (including area code) is:

My cell phone number (including area code) is: ████████████

My e-mail address is:

I am employed by     Mannix Family Market d/b/a ShopRite

  located at     2424 Hylan Blvd., Staten Island, NY

1       I am employed as Maintenance ~~Supervisor~~ *Lead Person 9 h* at the ShopRite supermarket located at 2424

2   Hylan Blvd., Staten Island, New York ("Hylan Store").  The company I work for is called

3   Mannix Family Market ("Mannix" or "Employer").  I have worked as either a Clerk or

4   Maintenance ~~Supervisor~~ *Lead Person 9 h* at the ShopRite supermarket since 1987.  I have worked at the Hylan

5   Store since 1997 or 1998.  Mannix took over as the owner of the Hylan Store in about 2007.  I

6   have worked for the Employer ever since.  My job duties as Maintenance ~~Supervisor~~ *lead Person 9 h* include

7   cleaning the entire Store and doing light repair work around the Store, and ensuring that the

8   Store is kept clean and in functioning order by directing other employees to perform specific

**Privacy Act Statement**
The NLRB is asking you for the information on this form on the authority of the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the NLRB in processing representation and/or unfair labor practice cases and related proceedings or litigation.  The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006).  Additional information about these uses is available at the NLRB website, www.nlrb.gov.  Providing this information to the NLRB is voluntary.  However, if you do not provide the information, the NLRB may refuse to continue processing an unfair labor practice or representation case, or may issue you a subpoena and seek enforcement of the subpoena in federal court.

Initials _____

| Cases 29-CC-241297 | | Confidential Witness Affidavit |
|---|---|---|

1   cleaning and/or light repair work. I am part of the group of Mannix employees represented in the

2   workplace by United Food and Commercial Workers Local 1500.

3        On Monday, April 29, 2019, I arrived at the Hylan Store a few minutes before 7 am. As I

4   drove in, I saw one inflatable rat positioned on the sidewalk near the fence line separating the

5   Store's parking lot from the street. The rat was directly adjacent to the traffic light directing

6   traffic into and out of the Store parking lot. This was the first time I had seen a rat positioned

7   near the Hylan Store. I did not stop or do anything else when I first saw the rat. I continued into

8   the Store and checked in to start my day of work. Part of my job is to check the area around the

9   fence line of the property to ensure that there is no trash or debris on our side of the fence line

10  and to pick it up if I see anything. Sometime between 9 a.m. and 10 a.m. on April 29, I went out

11  to check and clean the fence line as part of my regular job duties. No one directed me to go to

12  the fence line at that time. I was accompanied by Mike Opulente (spelling uncertain), who is a

13  Maintenance Clerk at the Hylan Store. Mike and I went to the area where the inflatable rat was

14  positioned. By that time, there were two inflatable rats erected. When we approached, I saw

15  about three men standing next to the two rats. I asked the men which union they were there

16  representing, and one of the men said that they were from the Carpenter's Union, Local 79. The

17  man then asked me whether I was a union worker. I said that I was and that I am a member of

18  Local 1500. The man replied that he just wanted to let me know that, after Mannix moves the

19  Hylan Store up the street to a new location that was under construction, it would not be a union

20  store anymore. The man said that the Employer was going to make sure that the new store

21  location was non-union. I told him that what he was saying was not true. I said that I was on the

22  board of Local 1500 and that if the employer was planning not to allow Local 1500 to represent

23  workers at the new store location, then I would know about it. I was not actually on the board of

- 2 -

Initials: _____

| Cases 29-CC-241297 | | Confidential Witness Affidavit |
|---|---|---|

1   Local 1500 at that time, but I was certain that the Employer was not going to kick the Union out

2   at the new location, so I wanted to forcefully contradict what this man was telling me. I believe

3   that the man was trying to get me to spread false rumors to my co-workers about the Employer

4   going non-union at the new location. After I said that I knew for a fact that the Employer was

5   not trying to go non-union, another one of the Local 79 representatives stepped forward and said

6   that I was right and that what the other man said was not true. This second man confirmed that

7   the Employer was not trying to go non-union at the new location. That was the end of the

8   conversation, as far as I recall. After that, I walked back towards the Store entrance.

9        At some point during my interaction with the Local 79 men outside the Store, one of

10   them handed me a flyer. The flyer said at the top in big bold letters, "Shame on You Kevin

11   Mannix!!" and contained a message about the Employer allowing the new store location to be

12   built using "exploited construction workers."

13        As I approached the Store entrance following my interaction with the Local 79 reps, I

14   saw the Employer's Director of Security Tommy Mannix standing outside the entrance. When I

15   saw him, I handed Tommy the flyer I had received from the Local 79 men and I said something

16   like, "Can you believe that those guys tried to tell me that we would be going non-union at the

17   new store location?" Tommy replied that was absolutely not true and that he did not know

18   where those guys got that false information from. Then I told Tommy that one of the other Local

19   79 guys later corrected his partner and clarified that Mannix was not planning to go non-union at

20   the new location. That was the end of the conversation between me and Tommy at that time. I

21   continued to walk back into the Store and continued with my work that day.

22        I have observed the Local 79 reps with at least one inflatable rat (I have seen them out

23   there with as many as three rats at once at various times) every weekday that I have worked at

- 3 -

Initials: _____

| Cases 29-CC-241297 | | Confidential Witness Affidavit |
| --- | --- | --- |

1   the Store since April 29. I work at the Hylan Store every weekday, except for Thursday. I also

2   work on Saturdays, and I have not seen the Local 79 reps or the rats on Saturdays. In addition, I

3   have driven past the site on several Sundays since April 29, and I did not see the rat out there on

4   Sundays. The rat(s) and the Local 79 men are always positioned in the same area, as described

5   above. I go out to that area from time to time during my work day to clean the area near the

6   fence line. I have observed that the Local 79 reps do not make any announcements or any verbal

7   statements to people who pass by. They generally just stand or sit quietly near the rat. They do

8   not pass out flyers to people who pass by. The only time I have seen them pass out flyers or

9   speak with passersby is when a passerby stops and talks to the Local 79 men. If someone stops

10   and asks them something, then I have seen the Local 79 men engage with the person and give

11   him/her a flyer.

12   ///

13   ///

14   ///

15   ///

16   ///

17.   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

- 4 -

Initials: _____

| Cases 29-CC-241297 | | | Confidential Witness Affidavit |
|---|---|---|---|

I have been given a copy of this Confidential Witness Affidavit. I understand that this affidavit is a confidential law enforcement record and should not be shown to any person other than my attorney or other person representing me in this proceeding.

I have read this Confidential Witness Affidavit consisting of five (5) pages, including this page, I fully understand it, and I state under penalty of perjury that it is true and correct. However, if after reviewing this affidavit again, I remember anything else that is important or I wish to make any changes, I will immediately notify the Board agent.

Date:   May 13, 2019          Signature:   _James Nappo_
                                                         James Nappo

Signed and sworn to before me on _____ May 13, 2019 _____ at

**Brooklyn, New York**

Matthew A. Jackson
Field Attorney
National Labor Relations Board
Region 29

- 5 -                                           Initials: _____

# EXHIBIT 8

Construction & General Building Laborers
Local 79, et al.
Case   29-CC-241297

## Confidential Witness Affidavit

I, <u>Ronny Thomas</u> , being first duly sworn upon my oath, state as follows:

I have been given assurances by an agent of the National Labor Relations Board (NLRB) that this Confidential Witness Affidavit will be considered a confidential law enforcement record by the NLRB and will not be disclosed unless it becomes necessary to produce this Confidential Witness Affidavit in connection with a formal proceeding.

My work address is: 2424 Hyland Blvd., Staten Island, NY 10306

My work telephone number (including area code) is:  (718) 979-3303

My cell phone number (including area code) is:  █████████

My e-mail address is:  █████████████

I am employed by     Mannix Family Market d/b/a Shop Rite

located at     2424 Hyland Blvd., Staten Island, NY 10306

1      I am employed as Store Manager for Mannix Family Market ("Employer" or "Mannix")

2    at 2424 Hyland Blvd. in Staten Island, New York ("Hyland Store"). The Employer operates a

3    Shop Rite supermarket at the Hyalnd Store. I have been Store Manager at the Hyland Store for

4    about the past 4 ½ years. In that position, I am responsible for overseeing the daily activities of

5    the store, including scheduling, stocking, inventory, preparing budgets and weekly sales

6    forecasts, among other duties.

7      Certain employees at the Hyland Store are currently represented by one of two labor

8    unions with whom Mannix has a collective-bargaining contract. United Food and Commercial

**Privacy Act Statement**

The NLRB is asking you for the information on this form on the authority of the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the NLRB in processing representation and/or unfair labor practice cases and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). Additional information about these uses is available at the NLRB website, www.nlrb.gov. Providing this information to the NLRB is voluntary. However, if you do not provide the information, the NLRB may refuse to continue processing an unfair labor practice or representation case, or may issue you a subpoena and seek enforcement of the subpoena in federal court.

- 1 -                            Initials _____

| Cases 29-CC-241297 | | | Confidential Witness Affidavit |
|---|---|---|---|

1    Workers (UFCW), Local 342 represents non-supervisory employees in the meat, deli and

2    seafood departments. UFCW Local 1500 represents non-supervisory employees in all of the

3    supermarket's other departments.

4          On about Monday, April 29, 2019, a little bit before 7:00 a.m., I observed about four men

5    setting up three inflatable rats on the sidewalk on Hyland Blvd., just to the right side of the

6    entrance to the Store, facing into the Store. I approached these men and asked them which union

7    they were from. A young man in the group with sandy brown hair and a small goatee, who

8    seemed to be the leader of the group, answered that they were from Construction & General

9    Building Laborers Local 79. I then asked him why they were setting up the inflatable rats

10    because the Hyland Store was already a union shop. The young man answered that the group

11    was there inflating the rats because the Employer was involved in building a new store nearby,

12    which did not use union labor in the construction of the new facility. I understood what the

13    young man was referencing. A company called Kimco is currently constructing a new shopping

14    center on Hyland Blvd. about two blocks away from the current Hyland Store. Mannix has

15    nothing to do with the construction of that facility. However, Mannix will open a Shop Rite

16    supermarket at the new shopping center when it opens, as we have agreed to be the anchor tenant

17    at the new facility. Mannix plans to close the current Hyland Store and open a new Hyland Store

18    once the new shopping center is constructed and is opened. I replied to the young man with the

19    inflatable rates that Mannix was merely a tenant at the new shopping center and had nothing to

20    do with the construction project over there. I also informed him that once the shopping center

21    opens, Mannix would be the only business at that new facility employing union-represented

22    workers. The young man replied that as the largest tenant at the new shopping center, Mannix

23    had influence over Kimco, the developer of the site. The young man also said that Mannix has

Initials: RT

| Cases 29-CC-241297 | | | Confidential Witness Affidavit |
|---|---|---|---|

1    control over the interior of the building.  I'm not sure what he meant by that, but I believe he was

2    indicating that he believed that Mannix would control the construction of the interior of the

3    supermarket being built at the site after the exterior "shell" of the building had been erected.  I do

4    not believe that Mannix will have any control over the construction of the interior of the

5    supermarket, but I do not know for sure if that's true.

6        I then started looking at the exact location of where these men were setting up the

7    inflatable rats.  I told the group that if they were blocking either the sidewalk in front of the Store

8    or the entrance to the Store, then I would call the police and ask the police to remove them from

9    the area.  The young man replied to that by telling me to not "break [his] balls."  He added that

10   he had "a boss" just like I had "a boss."  I asked him how long I would have to put up with this

11   group being outside of my Store, and the young man replied that they would be out there every

12   day until the new Store was open.  At that point, I walked back into the Store, and that was the

13   end of my interaction with the men from Local 79.  I have not spoken with or otherwise engaged

14   the men who appeared outside the Hyland Store in subsequent days since this initial interaction.

15        On April 29, the men stayed at the location outside the Hyland Store described above

16   with their inflated rats until about 2 pm.  Once the rats were fully erected, I saw that they each

17   had affixed to the stomach area of the rat a flyer that read in big bold print at the top, "Shame on

18   You Kevin Mannix!!" and contained a message about how the Employer was allowing Kimco to

19   use "exploited construction workers."  The men from Local 79 stood or in the same position,

20   more or less, throughout the time they were there.  I did not see them hand-billing or distributing

21   flyers that day.  I did not observe the men from Local 79 saying anything to passersby or making

22   any announcements or chants while they stood or sat with the inflated rats outside our Store.

23   However, the men had a envelope full of the flyer with "Shame on You Kevin Mannix!!" written

Initials: _KT_____

| Cases 29-CC-241297 | | | Confidential Witness Affidavit |
|---|---|---|---|

1   at the top, and I observed them handing the flyer to people who stopped and spoke with the men

2   as they passed by.  I otherwise did not see them handing out the flyer – only to people who

3   stopped and engaged with them.

4           The men from Local 79 positioned their inflated rats in such a way that they did not block

5   the sidewalk on Hyland Blvd. or impede entrance into and out of the Hyland Store.  Nonetheless,

6   Mannix called the police on April 29 to report the situation.  I saw that Officers came out to the

7   scene and investigated the situation.  They later came to me and informed me that the men from

8   Local 79 were within their rights to demonstrate in the location where they set up, but the police

9   officers told me that they concluded that the three inflated rats the men had erected were

10  "excessive," and the officers demanded that they take one of them down.  Before the men left at

11  about 2 pm that day, they had taken down one of their three inflated rats.

12          I have observed the same four men – or different combinations of the same four men at

13  different times – erect one or two inflatable rats in the same location every weekday (Monday –

14  Friday).  I have observed the men – or any combination of them – and standing or sitting beside

15  the rat(s) from about 6:15am to 2:00pm each weekday since April 29.

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

- 4 -                    Initials: _____

| Cases 29-CC-241297 | | | Confidential Witness Affidavit |
|---|---|---|---|

I have been given a copy of this Confidential Witness Affidavit. I understand that this affidavit is a confidential law enforcement record and should not be shown to any person other than my attorney or other person representing me in this proceeding.

I have read this Confidential Witness Affidavit consisting of five (5) pages, including this page, I fully understand it, and I state under penalty of perjury that it is true and correct. However, if after reviewing this affidavit again, I remember anything else that is important or I wish to make any changes, I will immediately notify the Board agent.

Date: May 13, 2019          Signature: _Ronny Thomas_
                                       Ronny Thomas

Signed and sworn to before me on ____May 13, 2019____ at

**Brooklyn, New York**

Matthew A. Jackson
Field Attorney
National Labor Relations Board
Region 29

- 5 -                                      Initials: _____

# EXHIBIT 9

Construction & General Building Laborers
Local 79, et al.
Case No.: 29-CC-241297

I, Tony Martori, do hereby declare as follows:

1.    I am the Store Manager at the ShopRite store located at 3010 Veterans Road West, Staten Island, New York. My email address is ████████████. My business phone number is 908.489.4839.

2.    I have been the Store Manager for approximately three years. My duties are overseeing the day-to-day operations of the store.

3.    On May 20, 2019, one union representative arrived at the store at approximately 6:15 a.m. He immediately erected a large inflatable rat.

4.    The union representative and rat were located on a public walkway adjacent to Veterans Road approximately 15 yards to the entrance of the parking lot and approximately 150 yards to the store's entrance.

5.    At approximately 7 a.m., another two union representatives arrived making three in total.

6.    At approximately 8 a.m., my store employee, Lou Romanano, spoke with the union representatives and then provided me with a handbill he received from them. Across the top of the handbill, it stated: "Shame on You Kevin Mannix!!" with additional writing underneath. I provided a copy of this handbill to my District Manager, Mike Koch.

7.    The union representatives were either standing or sitting in their vehicle during this period. They were not making any loud noises or chants. I did not observe any signage or electronic billboards.

8.    The three union representatives had left the premises by approximately 1:15 p.m.

9.    On May 21, 2019, one union representative arrived at the store at approximately 6:15 a.m. He immediately erected a large inflatable rat.

10.    The union representative and rat were again located on a public walkway adjacent to Veterans Road approximately 15 yards to the entrance of the parking lot and approximately 150 yards to the store's entrance.

11.    At approximately 7 a.m., another two union representatives arrived making three in total.

1

DECLARATION OF TONY MARTORI

1    12.    At approximately 12:20 p.m., store security guard, Keith Mack, advised me that he

2 observed the union representatives communicate with a store customer regarding their demonstration

3 activities.

4    13.    The union representatives were again either standing or sitting in their vehicle during this

5 period. They were not making any loud noises or chants. I did not observe any signage or electronic

6 billboards.

7    14.    Two of the union representatives left the premises by approximately 12:30 p.m. The third

8 representative left the premises with the rat approximately 1:15 p.m.

9    15.    I am not aware of what local or international union the union representatives were affiliated

10 with.

11    16.    My store's security video recorded the general area of the above-referenced activities. This

12 video has been preserved.

13         I declare under penalty of perjury that the foregoing is true and correct.

14         Dated this 21st day of May, 2019, Staten Island, New York

15

16

17                                    ___Tony Martori, Declarant

18

19

20

21

22

23

24

25

26

27

c:\users\mxkd1.\appdata\local\3 microsoft\wind ows\inetcache\i ie\rv3szi2\tms 22853382v.1

DECLARATION OF TONY MARTORI

# EXHIBIT 10

Construction & General Building Laborers
Local 79, et al.
Case No.: 29-CC-241297

I, Lou Romagnano, do hereby declare as follows:

1.      I am the Produce Manager at the ShopRite store located at 3010 Veterans Road West, Staten Island, New York. My business phone number is 908.489.4839.

2.      I have been the Produce Manager for approximately three years. My duties are overseeing the day-to-day operations of the Produce Department.

3.      I am a member of Local 1500 of the International UFCW.

4.      On May 20, 2019, at approximately 8 a.m., I observed three union representatives, along with a large inflatable rat, on the sidewalk outside of the store's parking lot. They were just standing near the rat on the sidewalk.

5.      I then greeted them and asked what they were doing. One of the union representatives responded that this has to do with the construction of the new ShopRite on Hylan Boulevard. He then asked me if I was a store manager and I stated I was not and that I am a union member.

6.      He further explained that the unions thought they had the job for the construction of the new store and that a "spokesman" on Staten Island got involved and that was it. He did not identify who the spokesman was.

7.      As I started walking away, the union representative handed me a handbill, which stated: "Shame on You Kevin Mannix!!" with additional writing underneath. I did not ask for a copy of the handbill.

8.      When I returned to the store, I gave the handbill to my Store Manager, Tony Martori.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 21st day of May, 2019, Staten Island, New York

_____Lou Romagnano, Declarant

1

DECLARATION OF LOU ROMAGNANO

c:\users\mdd1\appdata\local\3 microsoftwin
owel\ipelcache\ iela4y337A6y  22855274v.1

# EXHIBIT 11

# Shame on You
# Kevin Mannix!!

Kevin Mannix Owner and Operator of 3 ShopRite
grocery stores on Staten Island is allowing GTL
Construction to exploit construction workers at
2600 Hyland Boulevard!

Would you not agree that a less trained and less skilled
construction workforce can lead to an unsafe workplace,
shoddy workmanship and will produce a lower quality
finished product?

While New York City construction workers build our city, help
show your support for their desire to work in a safe environment
and be treated with the *dignity* and *respect* they deserve.

We demand living wages for construction workers!!

Call Kevin Mannix @ (718) 979-3303
and tell him that all workers deserve a living wage.

# Shame on You
# Kevin Mannix!!

Kevin Mannix – Owner and Operator of 3 ShopRite grocery stores on Staten Island – is standing by while Kimco Realty Corp has GTL Construction build his new ShopRite (at 2600 Hyland Boulevard) *using exploited construction workers!*

Would you not agree that a less trained and less skilled construction workforce can lead to an unsafe workplace, shoddy workmanship and will produce a lower quality finished product?

While New York City construction workers build our city, help show your support for their desire to work in a safe environment and be treated with the *dignity* and *respect* they deserve.

We demand living wages for construction workers!!

Call **Kevin Mannix** @ (718) 979-3303 and tell him that all workers deserve a living wage.

This leaflet, produced by Local 79, is directed at the public and is not an inducement for anyone to stop working or making deliveries

# Shame on You
# Kevin Mannix!!

Kevin Mannix – Owner and Operator of 3 ShopRite grocery stores on Staten Island – is standing by while Kimco Realty Corp has GTL Construction build his new ShopRite (at 2600 Hyland Boulevard) *using exploited construction workers!*

Would you not agree that a less trained and less skilled construction workforce can lead to an unsafe workplace, shoddy workmanship and will produce a lower quality finished product?

While New York City construction workers build our city, help show your support for their desire to work in a safe environment and be treated with the *dignity* and *respect* they deserve.

We demand living wages for construction workers!!

Call **Kevin Mannix** @ (718) 979-3303
and tell him that all workers deserve a living wage.