FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 13 2019 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

KATHY DREW KING, Regional Director of
Region 29 of the National Labor Relations Board,
for and on behalf of the NATIONAL LABOR
RELATIONS BOARD

    Petitioner

v.

CONSTRUCTION & GENERAL BUILDING
LABORERS' LOCAL 79, LABORERS'
INTERNATIONAL UNION OF NORTH AMERICA

    Respondent

CV 19-3496
CV

BLOCK, J.

BLOOM, M.J.

**PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR TEMPORARY RESTRAINING ORDER UNDER §10(l) OF THE NATIONAL LABOR RELATIONS ACT, AS AMENDED**

I.    **STATEMENT OF THE CASE**

Before this Honorable Court is the Petition of Kathy Drew King ("Petitioner"), Regional Director of Region 29 of the National Labor Relations Board ("Board"), for a temporary restraining order pursuant to § 10(l) of the National Labor Relations Act, as amended (29 U.S.C. § 160(l)) ("the Act")[1]. On behalf of the Board, Petitioner seeks to temporarily enjoin Construction & General Building Laborers' Local 79, Laborers' International Union of North America ("Respondent"),[2] from engaging in unfair labor practices in violation of § 8(b)(4)(i) and (ii)(B) of the Act.

---

[1] Under Section 10(l) of the Act, Petitioner is required to petition the Court for a preliminary injunction against a continuation of the unfair labor practice. 29 U.S.C. § 160(l)
[2] At all material times herein, Respondent has been engaged in promoting and protecting the interests of their employee-members. Respondent is a labor organization within the meaning of §§ 2(5), 8(b), and 10(l) of the Act (29 U.S.C. §§ 152(5), 158(b), and 160(l)).

1

The temporary restraining order would prohibit Respondent, during the pendency of the charge before the Board, from engaging in picketing of and other activities enmeshing neutral third parties. Petitioner seeks the requested relief because there is a substantial likelihood that the Board will find that Respondent engaged in unfair labor practices within the meaning of § 8(b)(4)(i) and (ii)(B) of the Act, and because it is just and proper for this Court to grant injunctive relief pending a final decision on the merits by the Board.

The injunctive relief sought against Respondent is premised on the unfair labor practice charge 29-CC-241297 filed by Mannix Family Market @ Hylan Blvd LLC (Mannix Hylan) and Mannix Family Market @ Forest and Richmond Ave. LLC, (Mannix Richmond), filed on May 9, 2019. (Ex. 1.)[3] The charge alleges that Respondent, in violation of §8(b)(4)(i) and (ii)(B) of the Act, has engaged in secondary activity targeted at Mannix Hylan and Mannix Richmond grocery stores and Mannix Family Markets @ Veterans Rd LLC (Mannix Veterans) (collectively Mannix-owned stores), entities with whom Respondent does not have a labor dispute. Kevin Mannix is the majority shareholder of Mannix Hylan, Mannix Richmond, and Mannix Veterans. Each grocery store does business as ShopRite.

Secondary boycotts occur when a union directs economic coercion against a "neutral" or "secondary" employer that is uninvolved with the union's primary labor dispute with another employer in order to coerce the neutral employer to cease doing business with the primary employer. See generally *Electrical Workers (IBEW) Local 501 v. NLRB*, 181 F.2d 34, 37 (2d Cir. 1950), aff'd, 341 U.S. 694 (1951); Patrick Hardin & John E. Higgins, Jr., *The Developing Labor Law*, at 1621 (4th ed. 2001). In this case, the "primary" employers with whom the Respondent has a labor dispute are Kimco Realty (Kimco) and GTL Construction LLC (GTL). This labor dispute

---

[3] References herein are to the Exhibits attached to the accompanying Petition.

2

centers around Kimco having hired GTL to build a shopping center at 2600 Hylan Boulevard, Staten Island, New York (the Boulevard Project) and GTL allegedly using non-union construction labor and paying employees below area-standard wages and benefits. Kimco leased space to Wakefern Food Corp. (Wakefern) at the Boulevard Project and Wakefern entered into a sublease agreement with Mannix for Mannix to operate a grocery store upon the completion of the construction. Respondent has no primary labor dispute with Mannix-owned stores.

The instant Section 8(b)(4)(i) and (ii)(B) case arises out of the Respondent's unlawful efforts to enmesh the neutral Mannix-owned stores in the primary labor dispute Respondent has with Kimco and GTL. The objective of Respondent's secondary conduct is to force Kevin Mannix, the majority owner and operator of the Mannix-owned stores, to break the sub-lease agreement with Wakefern Food Corp. (Wakefern) to operate a grocery store at the Boulevard Project upon completion of construction. Respondent's goal is also to induce and encourage the employees of the Mannix-owned stores and other third-party employees to engage in a strike or to refuse in the course of their employment to use, transport, or otherwise handle or work on certain goods, articles, materials, or commodities of Mannix-owned stores or refuse to perform services for Mannix-owned stores. Based on this charge, a Complaint and Notice of Hearing, against Respondent issued on June 6, 2019, and was amended on June 11, 2019. A hearing on that Complaint is scheduled to begin before an Administrative Law Judge of the Board on July 24, 2019. (Ex. 2.)

The form of Respondent's economic coercion is the use of inflatable rats and an inflatable cockroach that are erected daily at or near the premises of Mannix-owned stores. The rats are large in size, are accompanied by at least two Respondent agents, and have a handbill taped to the stomach of the rat that reads in part, "Shame on you Kevin Mannix." On at least one occasion,

3

Respondent inflated a rat and an inflatable cockroach and held a rally with approximately 20-25 union members, who chanted using bullhorns to amplify their chanting, and blocked the sidewalk, forcing the public to walk in the road to pass their protest to enter the Mannix Hylan grocery store.

Given this setting, the inflatable rat and cockroach constitute unlawful secondary picketing designed to threaten, coerce, or restrain the neutral employers under Section 8(b)(4)(i) and (ii)(B).

As discussed herein, Petitioner submits that the evidence contained in the affidavits and exhibits filed in support of the Petition for Temporary Restraining Order establishes that the injunctive relief requested is just and proper.

## II.     THE STANDARD FOR INJUNCTIVE RELIEF UNDER SECTION 10(l)

Section 10(l) was added to the Act in 1947 to provide for interlocutory relief from certain unfair labor practices Congress deemed so disruptive of interstate commerce that to await the final disposition of the matter before the Board, and ultimately before the courts, would result in irreparable harm to the public interest and the policies of the Act. Section 10(l) of the Act[4] authorizes United States district courts to grant temporary restraining orders and preliminary injunctions pending the Board's resolution of certain enumerated unfair labor practice charges, including charges filed under § 8(b)(4)(i) and (ii)(B) of the Act. Section 10(l) embodies Congress' recognition that, because the Board's administrative proceeding are often protracted, in many instances, absent interim relief, a respondent could accomplish its unlawful objective before being placed under any legal restrain, and could render a final Board order ineffectual. *See* S. Rep. No.

---

[4] Section 10(l) provides, in pertinent part, as follows: "Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(A), (B), or (C) of section 158(b) of this title..., the preliminary investigation of such charge will be made forthwith and given priority over all other cases except cases of like character in the office where it is filed or to which it is referred. If, after such investigation, the officer or regional attorney to whom the matter be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any United States district court within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law."

4

105, 80th Cong., 1st Sess., at pp. 8, 27 (1947); *Danielson v. Jt. Bd. Of Coat, Suit and Allied Garment Workers*, 494 F. 2d 1230, 1241 (2d Cir. 1974).

To resolve a Section 10(l) petition, a district court in the Second Circuit considers only two issues: whether there is "reasonable cause to believe" that a respondent has violated the Act and whether injunctive relief is "just and proper." See *Silverman v. Local 78, Asbestos, Lead and Hazardous Waste Laborers*, 958 F. Supp. 129, 133 (S.D.N.Y. 1996) citing *Kaynard v. Palby Lingerie, Inc.*, 625 F.2d 1047 (2d. Cir. 1980); *Blyer v. Staten Island Cable LLC.*, 261 F.Supp.2d 168, 170 (E.D.N.Y. 2003).

### A. The Reasonable Cause Standard

A Section 10(l) proceeding is ancillary to the Board's administrative proceeding, and the ultimate determination on the merits of the unfair labor practice case is reserved exclusively for the Board, subject to review by the courts of appeals under Section 10(e) and (f) of the Act (29 U.S.C. §§ 160(e), 160(f)). Therefore, when confronted with a petition for injunction under Section 10(l), "the court's inquiry is limited to whether the Board has reasonable cause to believe that the respondents have violated the NLRA as charged." *Blyer v. Staten Island Cable LLC.*, 261 F.Supp.2d 168, 170 (E.D.N.Y. 2003). In analyzing whether reasonable cause exists, a district court in the Second Circuit must determine whether there is "some significant possibility that the Board will enter an enforceable order." *Danielson v. Jt. Bd. Of Coat, Suit and Allied Garment Workers*, 494 F. 2d 1230, 1244 (2d Cir. 1974).

With respect to factual issues, the district court's inquiry is limited to whether the Board has reasonable cause to believe that Respondent has violated the Act. As stated in *Madden v. Hod Carriers, Local 41*, 277 F.2d 688, 692 (7th Cir. 1960), *cert. denied*, 364 U.S. 863 (1960, "the evidence need not establish a violation. It is sufficient…if there be any evidence which together

5

with all the reasonable inferences that might be drawn therefrom supports a conclusion that there is reasonable cause to believe that a violation has occurred." Accord *Douds v. Milk Drivers and Dairy Employees Union, Local 584*, 248 F.2d 534, 537 (2d. Cir. 1957). If the district court concludes that reasonable cause exists, then it must grant such relief as it deems just and proper.

In evaluating whether there is reasonable cause to believe that Respondent violated the Act as alleged, the district court is not called upon to resolve issues of credibility. The function of the district court regarding issues of credibility raised by the evidence presented is limited to a determination of whether such issues could ultimately be resolved by the Board in favor of the Petitioner, i.e., the Board's General Counsel. The district court need not find a probability that the issues will be so resolved by the Board. *Milk Drivers and Dairy Employees Union, Local 584*, 248 F.2d at 537.

With respect to legal issues, "the district court should be hospitable to the views of the General Counsel, however novel," *Jt. Bd. Of Coat, Suit and Allied Garment Workers*, 494 F. 2d at 1244, for "the Board, rather than the district courts, remain the 'primary fact finder' and 'primary interpreter of the statutory scheme,' subject to judicial review by a court of appeals pursuant to Section 10(e) and (f)." *McLeod v. National Maritime Union of America*, 457 F.2d 490, 494 (2d Cir. 1970), citing *Schauffler v. Local 1291, International Longshoremen's Assn.*, 292 F.2d 182, 188 (3rd Cir. 1961). See also *Kaynard v. Independent Routeman's Association*, 479 F.2d 1070 (2d Cir. 1973), where this circuit stated that "a reasonable possibility" that the Board will sustain the unfair labor practices is all that is required.

**B. The Just and Proper Standard**

In determining whether an injunction is warranted under Section 10(l) of the Act, the Second Circuit also looks at whether "temporary injunctive relief would be 'just and proper' in

6

terms of general equitable principles." *McLeod v. Local 25, International Brotherhood of Electrical Workers*, 344 F.2d 634, 638 (2d Cir. 1965); see also *Silverman v. Local 78, Asbestos, Lead and Hazardous Waste Laborers*, 958 F.Supp. 129, 135 (S.D.N.Y 1996). In *Ahern v. Freight Drivers, Helpers, Dockmen and Allied Workers Local Union No. 375*, the district court noted that there are numerous factors used to determine whether the requested injunction is "just and proper," including whether the injunction "will further public interest in maintaining respect for the law and promptly eliminate obstructions to free flow of commerce." 1992 WL 373537 at 6 (W.D.N.Y. 1992). Other considerations include whether the proposed injunction will maintain the status quo, the potential for irreparable injury, and whether denial of the proposed injunction will "nullify or render meaningless the Board's final determination." *Id.* See also *Blyer v. Staten Island Cable LLC*, 261 F.Supp.2d 168, 174 (E.D.N.Y. 2003) ("injunctive relief should be granted when necessary to preserve or restore the status quo 'as it existed before the onset of the unfair labor practices,' or to prevent irreparable injury").

### III.  THE FACTS

#### A. Background

Kevin Mannix (Mannix) is the majority shareholder of three grocery stores in Staten Island, New York, Mannix Hylan, Mannix Richmond, and Mannix Veterans, each doing business under the ShopRite name. The employees of each Mannix store are represented by United Food and Commercial workers Locals 342 and 1500. No labor dispute currently exists between Mannix and the unions which represent its employees, nor between Respondent and Mannix.

Kimco is currently constructing a shopping center at 2600 Hylan Boulevard, Staten Island, New York, known as the Boulevard Project Shopping Center (Boulevard Project). Kimco has retained GTL to construct the Boulevard Project. Kimco and GTL have exclusive control of the

construction project at the shopping center. Wakefern Food Corp. (Wakefern) entered into an agreement with Kimco to lease space at the Boulevard Project. Kevin Mannix entered into a sublease agreement with Wakefern to operate a grocery store at the Boulevard Project upon completion of construction. Neither Mannix nor Wakefern has any control over the wages, hours and other terms and conditions of employment of GLT's employees, who are constructing the Boulevard Project.

Respondent has a labor dispute with GTL which employs non-union labor at the Boulevard Project.

**B. Secondary Picketing Activity**

Beginning on or about April 29, 2019, Respondent began picketing Mannix-owned grocery stores, including at Mannix Hylan and Mannix Veterans in furtherance of its dispute with GTL. Respondent erected multiple inflatable rats and handbilled outside these Mannix-operated grocery stores, declaring "SHAME ON KEVIN MANNIX" and blaming Mannix for the fact that the GTL was not paying GTL's employees area standard wages and benefits. Respondents have inflated up to three inflatable rats at a time outside Mannix-owned stores. The neutral stores where this conduct has taken place are not near the Boulevard Project construction site and they are totally unrelated to GTL's work at the Boulevard Project. Respondent's use of the inflatable rats and handbilling at the Mannix stores, as described above has continued from April 29 through the present for several hours each day.

On May 15, 2019, at the Mannix Hylan store location, between 20 and 25 agents of Respondent gathered on the sidewalk leading to the store entrance. In addition to the usual inflatable rat, Respondent also erected a large inflatable cockroach. The gathering of people and the inflatables occupied the entire sidewalk leading into the parking lot, preventing passersby from

accessing the sidewalk. The demonstrators chanted and yelled into bullhorns amplifying sound such that it could be heard inside the grocery store. One such chant was a call and response with the leader yelling "What do we want," the crowd responding, "Union labor," the leader asking, "When do we want it?" the crowd responding "Now!" and the leader asking, "If we don't get it?" and the crowd responding, "Shut it down!" Respondents agents also blew whistles repeatedly while chanting. The demonstration lasted about 75 minutes.

Since approximately May 20, 2019, Respondent has daily posted an inflatable rat or cockroach at the Mannix Veterans store and handbilled alongside that rat in a similar fashion to Respondent's behavior at the Mannix Hylan store. At times, Respondent's agents have distributed handbills specifically to Respondent's employees, telling them that Kevin Mannix intends to operate his new store, non-union, which is false. Respondent has continued to post an inflatable rat and hand out the described flyers at Mannix-owned stores. Respondent erects between one and three inflatable rats and/or inflatable cockroaches each time.

The object of Respondent's actions is to coerce employees of the Mannix stores to cease working for Mannix and to persuade customers and others engaged in commerce to cease doing business with Mannix, thus apply pressure on Mannix to break its lease with Wakefern and by extension cease doing business with Kimco and GLT to advance Respondent's labor dispute with GTL.

## IV. LEGAL ARGUMENT

Here, Petitioner will shortly be seeking a preliminary injunction restraining Respondent from engaging in unfair labor practices described herein within the meaning of § 8(b)(4)(i) and (ii)(B) of the Act pending the final disposition of the administrative case before the Board. Petitioner's basis for seeking the requested relief is that the Petitioner has reasonable cause to

9

believe that Respondent's conduct violates the Act within the meaning of §8(b)(4)(i) and (ii)(B) of the Act, and because it is just and proper for this Court to grant injunctive relief pending a final decision on the merits by the Board.

### A. Petitioner Has Reasonable Cause to Believe that Respondent's Conduct Violates §8(b)(4)(i) and (ii)(B) of the Act

Section 8(b)(4)(i) and (ii)(B), the so-called "secondary boycott" provisions of the Act, makes it "'an unfair labor practice for a labor organization ... induce or encourage any individual employed by any person engaged in commerce...to engage in, a strike or a refusal in the course of his employment to ...perform any services; or to threaten, coerce, or restrain' a person not party to a labor dispute 'where ... an object thereof is ... forcing or requiring [him] to ... cease doing business with any other person.'" *NLRB v. Retail Clerks Local 1001 (Safeco Title Ins. Co.)*, 447 U.S. 607, 611 (1980) (quoting 29 U.S.C. § 158(b)(4)(ii)(B)). In other words, that provision prohibits a union that has a dispute with one employer (the "primary") from pressuring other "secondary" or "neutral" employers who deal with the primary, where the union's conduct is calculated to force the secondary's employees to stop working or to cease dealing with the primary and thus increase the union's leverage in its dispute with the primary. *See National Woodwork Mfrs. Ass'n v. NLRB*, 386 U.S. 612, 620-627 (1967); *Iron Workers Dist. Council (Hoffman Constr.) v. NLRB*, 913 F.2d 1470, 1475 (9th Cir. 1990).

As described above, Respondent has engaged in coercive conduct aimed at a neutral employer- Mannix grocery stores - in an attempt to cause employees, suppliers and patrons of those grocery stores to force Mannix to break his lease with Wakefern, or to force Wakefern to break its lease with Kimco, in an attempt to force GTL to use union-labor and pay area standards at the Boulevard Project construction site, in violation of § 8(b)(4)(i) and (ii)(B) of the Act. Further,

Respondent's tactics are designed to coerce customers and others engaged in commerce to cease doing business with Mannix unless Mannix capitulates to Respondent's demands. It does not matter that this unlawful object of the picketing is not Respondent's sole objective; it need only be an objective to be unlawful. *NLRB v. Denver Building and Construction Trades Council*, 341 U.S. 675, 689 (1951). Accord *National Maritime Union of America v. NLRB*, 342 F.2d 538 (2d Cir. 1965). As was the case in *International Union, United Mine Workers of Am. (New Beckley Mining)*, 304 NLRB 71 (1991), Respondent is targeting a neutral in an attempt to force it to break a lease with Wakerfern and Kimco. Respondent's actions including setting up a rat, handbilling, picketing the Mannix-owned stores, and distributing flyers that are ambiguous, misleading and inaccurate in an effort to confuse the public about the nature of Respondent's dispute by creating the impression that Mannix has control over GTL's employment practices.

The Mannix grocery stores are neutral third parties; neither GTL nor Kimco perform any work or have any connection to the Mannix stores where Respondent has engaged in its activity. Mannix has no ability to address Respondent's concerns about GTL's employees' terms and conditions of employment or of Kimco's decision to employ GTL.

In sum, Petitioner's investigation clearly established reasonable cause to believe that Respondent violated § 8(b)(4)(i) and (ii)(B) of the Act through its threats and coercion of the Mannix-owned entities and others engaged in commerce.

### B. A Temporary Restraining Order is Just and Proper

A temporary restraining order at this juncture, pending the filing of that Petition for Preliminary Injunctive Relief, is necessary due to the egregiousness of Respondent's actions. These actions have had a substantial impact on interstate commerce, which is the underpinning of the Act. Upon information and belief, as more fully developed in the affidavits attached hereto,

and made a part hereof, Respondent's unlawful conduct has resulted and continues to result in substantial and irreparable injury to both the policies of the Act and to Mannix' stores' business and other neutral entities and persons engaged in commerce. Respondent's actions disrupt the Mannix stores' essential services and interfere with Respondent's business.

An order restraining Respondent's unlawful actions would not affect Respondent's ability to engage in lawful picketing at the construction site where the primary targets, GTL and Kimco perform work. Until the Court can hear the full petition for a preliminary injunction, these unique circumstances make a temporary restraining order appropriate.

## V. CONCLUSION

Petitioner submits that the evidence contained in the affidavits and exhibits filed in support of its Petition for Temporary Restraining Order establish that all the injunctive relief requested is just and proper. Accordingly, it is respectfully requested that the Court grant the injunctive relief prayed for in the Petition.

DATED AT Brooklyn, New York, this 13th day of June, 2019.

_[signature]_

Erin Schaefer
National Labor Relations Board
2 MetroTech Center, 5th Floor
Brooklyn, NY 11201
Telephone: (718) 765-6158
Email: erin.schaefer2@nlrb.gov
*Counsel for the Petitioner*