# MEMORANDUM IN OPPOSITION
# TO THE REQUEST FOR INJUNCTIVE RELIEF

Joseph J. Vitale
Cohen, Weiss and Simon LLP
900 Third Avenue, Suite 2100
New York, New York 10022
(212) 356-0238

Tamir W. Rosenblum
Mason Tenders District Council
  of Greater New York
520 Eighth Avenue, Suite 650
New York, New York 10018
(212) 452-9407

Counsel for Construction and General
Building Laborers Local 79

01089802.1

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES...................................................................iii

ARGUMENT.............................................................................. 1

NO INJUNCTION SHOULD ISSUE BECAUSE THE REGIONAL
DIRECTOR CANNOT SHOW THAT THERE IS REASONABLE
CAUSE TO BELIEVE THE NATIONAL LABOR RELATIONS ACT
HAS BEEN VIOLATED AND THAT THE REQUESTED RELIEF IS
"JUST AND PROPER" ................................................................. 1

I.      AN INJUNCTION IS NOT "JUST AND PROPER"
        IF THE REGIONAL DIRECTOR SEEKS TO
        APPLY A NOVEL THEORY OF THE ACT ........................................ 1

II.     THE REGIONAL DIRECTOR IMPROPERLY BASES HER
        REQUEST FOR AN INJUNCTION ON A NOVEL THEORY THAT
        IS CONTRARY TO CURRENT BOARD LAW, WHICH HOLDS
        THAT A UNION'S USE OF THE INFLATED RAT IS LAWFUL.................... 3

III.    MINDFUL OF THE FIRST AMENDMENT, THE COURTS HAVE
        ROUTINELY REJECTED ATTEMPTS TO ENJOIN A UNION'S
        USE OF THE RAT AND THE DISTRIBUTION OF LEAFLETS.................... 6

        A.     The Supreme Court in 1988 Rejected the NLRB's Attempt
               to Use the Secondary Boycott Provisions of the NLRA
               as a Means to Deny Unions and Union Members
               Their First Amendment Right to Distribute Leaflets ........................... 6

        B.     In the Thirty Years Since the Supreme Court's Decision
               in *DeBartolo,* the Courts Have Expanded the Expressive
               Activity Permitted Against Secondary Employers to
               Include, Among Other Things, the Use of an Inflated Rat ................... 8

        C.     Since Its Decision in *DeBartolo,* the Supreme Court's
               Protection of First Amendment Activity Has Only Increased ............. 10

        D.     To the Extent the Regional Director Seeks to Enjoin
               the Distribution of Leaflets, That Request Must Be Denied ............... 15

IV.     AN INJUNCTION AGAINST THE UNION HOLDING A RALLY
        ON A PUBLIC SIDEWALK IS EQUALLY IMPROPER ................................ 16

CONCLUSION .......................................................................... 19

i

## TABLE OF AUTHORITIES

**Case**                                                                      **Page**

*Ahmad v. Long Island Univ.*, 18 F.Supp.2d 245 (E.D.N.Y. 1998) ..............................20

*Benson v. United Bhd. of Carpenters & Joiners, Locals 184 & 1498*,
    337 F.Supp.2d 1275 (D. Utah 2004) ..........................................................5

*Blyer v. New York Coat, Suit, Dress, Rainwear and Allied Workers'
    Union*, 522 F.Supp. 723 (S.D.N.Y. 1981)...................................................2

*Capital Awning Co. v. Local 137 Sheet Metal Workers Int'l Ass'n*,
    698 F.Supp.2d 308 (E.D.N.Y. 2010) ..........................................................8

*Carrier Air Conditioning Co. v. NLRB*, 547 F.2d 1178 (2nd Cir. 1976) ......................8

*DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*,
    485 U.S. 568 (1988) ...............................................................*passim*

*Eliason and Knuth*, 355 N.L.R.B. 797 (2010)..................................................3

*Eliason and Knuth of Denver*, 357 N.L.R.B. 415 (2011).........................................4

*Kohn v. Southwest Reg'l Council of Carpenters*,
    289 F.Supp.2d 1155 (C.D. Cal. 2003) ........................................................5

*Laborers' Eastern Region Organizing Fund (The Ranches at Mt. Sinai)*,
    346 N.L.R.B. 1251 (2006).........................................................................5

*LIUNA, Local 872*, 363 N.L.R.B. No. 168 (April 29, 2016) ..................................8

*Local 330 v. Town of Chute*, 834 F.3d 745 (7th Cir. 2016) ...................................8

*Metropolitan Opera Ass'n v Local 100*, 239 F.3d 172 (2d Cir 2001)..............12, 13, 14

*Overstreet v. United Brotherhood of Carpenters and Joiners*,
    409 F.3d 1199 (9th Cir. 2005)...................................................................5

*Pathmark Stores, Inc.*, 342 N.L.R.B. 378 (2004)..............................................4

*Sheet Metal Workers Int'l Ass'n (Brandon Medical Center)*,
    356 N.L.R.B. 1290 (2011).....................................................................3, 4

*Sheet Metal Workers' Int'l Ass'n, Local 15 v. NLRB*,
    491 F.3d 429 (D.C. Cir. 2007) ..............................................................9, 10

*Silverman v. 40-41 Realty Assocs.*, 668 F.2d 678 (2d Cir. 1982).....................1, 2, 19

Case                                                                            **Page**

*Snyder v. Phelps*, 562 U.S. 443 (2011) ................................................................. 11, 14

*State v. DeAngelo*, 185 L.R.R.M. 3057 (Sup. Ct. N.J. 2009) ......................................... 9

*Tru-Art Sign Co., Inc. v. Local 137 Sheet Metal Workers Int'l Ass'n*,
   573 F.App'x 66 (2d Cir. 2014) .................................................................... 8

*Tucker v. City of Fairfield*, 398 F.3d 457 (6th Cir. 2005) ........................................... 8

*Venetian Casino Resort*, 345 N.L.R.B. 1061 (2005) ................................................. 16

*Venetian Casino Resort v. Local Joint Exec. Bd.*,
   257 F.3d 937 (9th Cir. 2001) ..................................................................... 16

*Virginia v. Black*, 538 U.S. 343 (2003) ...................................................... 8, 10, 11, 14

*West Virginia Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943) ....................................... 8

Statutes

National Labor Relations Act ................................................................. *passim*

First Amendment ...................................................................................... *passim*

iii

## ARGUMENT

NO INJUNCTION SHOULD ISSUE BECAUSE THE
REGIONAL DIRECTOR CANNOT SHOW THAT THERE IS
REASONABLE CAUSE TO BELIEVE THE NATIONAL
LABOR RELATIONS ACT HAS BEEN VIOLATED AND
THAT THE REQUESTED RELIEF IS "JUST AND PROPER"

In *Silverman v. 40-41 Realty Associates*, the Second Circuit made it clear that when presented with a request for injunctive relief under Section 10(l), as the Regional Director requests here, the Court must determine two things: (1) whether there is reasonable cause to believe the National Labor Relations Act ("NLRA" has been violated; and (2) that the requested relief is "just and proper."[1]

The Second Circuit further noted that its ability to issue injunctions under Section 10(l) "in no way change[s] the extraordinary nature of the injunctive remedy."[2]

I.  AN INJUNCTION IS NOT "JUST AND PROPER" IF THE REGIONAL
    DIRECTOR SEEKS TO APPLY A NOVEL THEORY OF THE ACT

In *Realty Associates*, the Second Circuit held that injunctive relief is not "just and proper" where the legal theory advanced by the Regional Director involves an "unprecedented application of the Act," or where the issue in a given case is "a difficult one that had not been considered by any court."[3]

---

[1] *Silverman v. 40-41 Realty Assocs.*, 668 F.2d 678, 680 (2d Cir. 1982).

[2] *Id.*

[3] *Id.*

1

The Court recognized that the NLRA "envisaged a system in which the Board would, *in the first instance*, consider and decide the issues arising under the Act and pending before it, subject to *later review* by the Courts of Appeals."[4]  The Court therefore vacated the lower court's temporary injunction permitting interior picketing within an office building (which was a novel application of law governing picketing on a sidewalk) while the NLRB considered the lawfulness of such conduct. The Court reasoned that to consider an interior hallway the functional equivalent of a sidewalk for picketing purposes "places an entirely novel and questionable construction upon the Act."[5]  The Court rejected the Regional Director's request for an injunction as an attempt to "invert[] the traditional relationship between administrative agency and court: the court is asked to make the initial ruling as to the propriety of a novel and unprecedented application of the statute, and thereafter the Board will apply its expertise to the issues presented."[6]

In *Blyer v. New York Coat, Suit, Dress, Rainwear and Allied Workers' Union*, the district court similarly denied an injunction against picketing because the Regional Director was trying "to develop new law," "proceeding on the basis of a novel theory, never before upheld by the courts."[7]

---

[4] *Id.* (emphasis added).

[5] *Id.* at 681.

[6] *Id.*

[7] *Blyer v. New York Coat, Suit, Dress, Rainwear and Allied Workers' Union*, 522 F.Supp. 723, 727, 729 (S.D.N.Y. 1981).

2

For the same reasons, the current request should be denied because, as shown below, the Regional Director is improperly asking this Court to develop new law, contrary to established Board law and contrary to Supreme Court precedent that Section 8(b)(4) cannot be used to strip unions and their members of their First Amendment rights.

II.   THE REGIONAL DIRECTOR IMPROPERLY BASES HER
      REQUEST FOR AN INJUCTION ON A NOVEL THEORY
      THAT IS CONTRARY TO CURRENT BOARD LAW, WHICH
      HOLDS THAT A UNION'S USE OF THE INFLATED RAT IS LAWFUL

Since 2010, cognizant of the protection the First Amendment affords unions and their members (the judicial contours of which Local 79 will address in Section III), the NLRB has consistently held that expressive conduct such as a stationary banner, the distribution of leaflets, and the use of an inflated rat to "shame" a secondary employer does not violate Section 8(b)(4).

In *Sheet Metal Workers International Association (Brandon Medical Center)*, for instance, the Board held that the distribution of leaflets and the use of a rat balloon at a secondary employer's facility to protest its use of a nonunion contractor is a constitutionally protected expression within the parameters of the First Amendment, and the rat is protected symbolic speech that did not violate the National Labor Relations Act.[8]

---

[8] *Sheet Metal Workers Int'l Ass'n (Brandon Medical Center)*, 356 N.L.R.B. 1290 (2011); see *also Eliason and Knuth*, 355 N.L.R.B. 797 (2010) (permitting the use of a stationary banner).

The Board has not required a union to limit itself to only one form of expressive conduct and has rejected the notion that two lawful activities "in combination were more than the sum of their lawful parts."[9]

The General Counsel of the NLRB, Peter Robb, however, is now arguing that expressive conduct constitutes unlawful picketing. He does so fully aware that this theory is contrary to established Board law. He wants Regional Directors to pursue this new theory, that will inevitably be rejected by the Administrative Law Judge who hears the Complaint against Local 79,[10] so the Board can re-consider its decisions since 2010.[11]

---

[9] *Eliason and Knuth of Denver*, 357 N.L.R.B. 415, 419 (2011) ("The handbilling alone was undisputedly lawful, and the banner displays alone were lawful.... Nothing in the record or the law suggests that these two activities in combination were more than the sum of their lawful parts").

[10] After the issuance of a complaint by a Regional Director, a hearing is conducted before an Administrative Law Judge ("ALJ"), who issues a decision and recommends an Order, which can be appealed to the Board. https://www.nlrb.gov/cases-decisions/decisions/administrative-law-judge-decisions. ALJs are required to follow and apply existing Board law. *Pathmark Stores, Inc.*, 342 N.L.R.B. 378 n.1 (2004) ("[I]t remains the [ALJ's] duty to apply established Board precedent which the Supreme Court has not reversed").

[11] *See* Advice Memorandum issued December 20, 2018 in Case No. 13-CC-225655 (directing the Regional Director to issue a complaint that a union violated Section 8(b)(4) by "erecting a large, stationary banner...as well as a large, inflatable cat clutching a construction worker by the neck" and compelling the Regional Director to "urge the Board to reconsider its decisions in *Carpenters Local 1506 (Eliason & Knuth of Arizona)*, which found stationary banners lawful, and in *Sheet Metal Workers Local 15 (Brandon Medical Center)*, which found the large inflatable rats lawful. The Advice Memorandum is available at https://www.nlrb.gov/news-publications/nlrb-memoranda/advice-memos.

4

Robb is not the first NLRB General Counsel to challenge a union's right to engage in expressive activity using the symbol of an inflated rat. Arthur F. Rosenfeld, the NLRB General Counsel from June 2001 to July 2005, argued for the suppression of the rat-symbol in *Laborers' Eastern Region Organizing Fund (The Ranches at Mt. Sinai)*, 346 N.L.R.B. 1251 (2006). There, the NLRB declined to adopt an ALJ's (skewed) reasoning that the inflated rat was a presumptively illegal symbol. And while Rosenfeld three times sought injunctions under Section 10(l) to prevent unions from using large banners (all unsuccessful),[12] he never sought Section 10(l) relief with respect to the inflated rat.

The Court should recognize the temerity of the current request. The Court is being asked not only to upend current Board law but is being petitioned to do so on a subject which the NLRB wrestled with in the early 2000s and which for approximately nine years now has been settled NLRB law.

The instant request is not only historically unprecedented, as explained below, it is unlawful under the First Amendment.

---

[12] *See, e.g., Overstreet v. United Brotherhood of Carpenters and Joiners*, 409 F.3d 1199 (9th Cir. 2005) (affirming denial of injunction against union use of in light of *DeBartolo* and First Amendment protections); *Benson v. United Bhd. of Carpenters & Joiners, Locals 184 & 1498*, 337 F.Supp.2d 1275 (D. Utah 2004) (denying injunction against display of banners and peaceful distribution of leaflets in light of *DeBartolo* and First Amendment protections); *Kohn v. Southwest Reg'l Council of Carpenters*, 289 F.Supp.2d 1155 (C.D. Cal. 2003) (same).

III.   MINDFUL OF THE FIRST AMENDMENT, THE COURTS HAVE
       ROUTINELY REJECTED ATTEMPTS TO ENJOIN A UNION'S
       USE OF THE RAT AND THE DISTRIBUTION OF LEAFLETS

    A.   The Supreme Court in 1988 Rejected the NLRB's
            Attempt to Use the Secondary Boycott Provisions of the
            NLRA as a Means to Deny Unions and Union Members
            Their First Amendment Right to Distribute Leaflets

More than thirty years ago, the Supreme Court cautioned the Board about using the secondary boycott prohibitions of Section 8(b)(4) to deny unions and their members their First Amendment rights.

In *DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*, the union distributed handbills at the entrances of a shopping mall urging customers not to shop anywhere in the mall because one tenant was using a non-union construction company to build a store within the mall and that company paid its workers substandard wages.[13]  The union urged this boycott until the mall and all of its tenants—even though neither the mall nor the other tenants "had any contractual right to influence the selection of contractors"—promised that all mall construction would be done by contractors paying fair wages.[14]

Invoking the "constitutional avoidance" rule of statutory construction—that "where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of

---

[13] *DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 570-71 (1988).

[14] *Id.* at 570.

6

Congress"—the *DeBartolo* Court determined that the NLRB's finding that handbilling alone, peacefully and truthfully advising the public of the existence of a labor dispute, without picketing or patrolling, "poses serious questions of the validity of § 8(b)(4) under the First Amendment."[15]

The Court therefore held that to be consistent with the First Amendment, "more than mere persuasion is necessary to prove a violation of §8(b)(4)(ii)(B)."[16] The Court rejected the notion that handbilling directed at a secondary employer with the goal of convincing the secondary to cease doing business with the primary employer is "coercion" under Section 8(b)(4) simply because it succeeds in causing the secondary employer to lose business.[17]

*DeBartolo* also demonstrates that it is legally insufficient to argue, as the Region Director does here, that a union has the "improper" objective of trying to get the secondary employer (Mannix) to stop doing business with a primary employer (GTL). Such an *objective* is not "unlawful." After all, the Union in *DeBartolo* had just that objective: getting a tenant to stop using a non-union contractor that paid its workers substandard wages. To run afoul of Section 8(b)(4), a union must pursue that objective through *coercive conduct* such as picketing— rather than through persuasive speech or expressive activity. If the Regional Director cannot demonstrate that Local 79 engaged in coercive conduct within the

---

[15] *DeBartolo*, 485 U.S. at 575.

[16] *Id.* at 578.

[17] *Id.* at 579-80.

meaning of Section 8(b)(4) (and she cannot) the request for an injunction fails, regardless of whether Local 79 in its heart harbored a secondary objective.[18]

      B.    **In the Thirty Years Since the Supreme Court's Decision in *DeBartolo,* the Courts Have Expanded the Expressive Activity Permitted Against Secondary Employers to Include, Among Other Things, the Use of an Inflated Rat**

Since *DeBartolo,* the courts have applied its principles to permit expressive conduct similar to handbilling to avoid the First Amendment problem.

In *Tucker v. City of Fairfield*, the Court of Appeals for the Sixth Circuit held that "there is no question that the use of a rat balloon to publicize a labor protest is constitutionally protected expression within the parameters of the First Amendment."[19]

---

[18] *See also LIUNA, Local 872*, 363 N.L.R.B. No. 168, n.1. (April 29, 2016); *Carrier Air Conditioning Co. v. NLRB*, 547 F.2d 1178, 1189 (2nd Cir. 1976); *Capital Awning Co. v. Local 137 Sheet Metal Workers Int'l Ass'n*, 698 F.Supp.2d 308, 322-23 (E.D.N.Y. 2010); *Tru-Art Sign Co., Inc. v. Local 137 Sheet Metal Workers Int'l Ass'n*, 573 F.App'x 66, 67 (2d Cir. 2014).

[19] *Tucker v. City of Fairfield*, 398 F.3d 457, 462 (6th Cir. 2005) (affirming injunction preventing city from enforcement of city ordinance that prohibited structures in a public right-of-way). *See also Local 330 v. Town of Chute*, 834 F.3d 745, 751 (7th Cir. 2016) (citing *Tucker* and holding "[t]here is no doubt that the large inflated rubber rats widely used by labor unions to dramatize their struggles with employers are forms of expression protected by the First Amendment ... The display of the rats is 'speech' in the amplified sense in which the Supreme Court has held for example that burning the American flag to dramatize opposition to a government policy is constitutionally protected speech"); *Virginia v. Black*, 538 U.S. 343 (2003) ("[t]he First Amendment offers protection to symbolic or expressive conduct as well as to actual speech"); *West Virginia Bd. of Educ. v. Barnette*, 319 U.S. 624, 632-33 (1943) ("[s]ymbolism is a primitive but effective way of communicating ideas").

In *State v. DeAngelo*, the Supreme Court of New Jersey found unconstitutional an effort to regulate the use of the rat balloon through a municipal sign ordinance.[20]

In *Sheet Metal Workers' International Association, Local 15 v. NLRB*, the Court found that a "mock funeral" procession accompanied by a 16-foot-tall inflated balloon rat and handbilling outside a hospital "was a combination of street theater and handbilling" and was not the "functional equivalent" of picketing and therefore outside the scope of Section 8(b)(4).[21] The union's activity had none of the "coercive" characteristics of picketing, did not physically or verbally "confront hospital patrons, nor" patrol the area in the sense of creating a symbolic barrier to those who would enter the [h]ospital."[22]

More recently, in *Microtech Contracting v. Mason Tenders District Council*, this District denied an injunction against a union's use of the inflated rat, noting "[i]t is abundantly clear that Local 78 has a constitutional right to use an inflatable rat to publicize a labor dispute."[23] This Court recognized that the use of the inflated rat generates "generalized economic disruption" but held that such

---

[20] *State v. DeAngelo*, 185 L.R.R.M. 3057 (Sup. Ct. N.J. 2009).

[21] *Sheet Metal Workers' Int'l Ass'n, Local 15 v. NLRB*, 491 F.3d 429, 437-438 (D.C. Cir. 2007).

[22] *Id.*

[23] *Microtech Contracting v. Mason Tenders District Council*, 55 Supp.3d 381, 384 (E.D.N.Y 2014).

disruption could not be relied upon to grant an injunction that would "completely eviscerate the First Amendment rights of the union."[24]

In fact, the courts' protection of the rat symbol may be beside the point to the Regional Director, because her Complaint at paragraphs 17 and 23 alleges that it was also illegal for the Union to have inflated a cockroach balloon.  Unlike General Counsel Rosenfeld in the early 2000's who took particular issue with the message supposedly implicit in the inflated rat, this General Counsel appears to take the position that it is secondary messaging by labor *writ large*, regardless of form, that is the problem.  *DeBartolo*, again, holds just the opposite.

C.    Since Its Decision in *DeBartolo*, the Supreme Court's
       Protection of First Amendment Activity Has Only Increased

Since the Supreme Court's protection of the union's handbilling of secondary employers in 1988, the Court has issued at least two decisions that further expand the First Amendment's protection of expressive activity.

In 2003, in *Virginia v. Black*, the Supreme Court found a Virginia statute against cross burning unconstitutional because it established an undue presumption that the act of burning a cross was meant to intimidate.  Even when a person expressly advocates "the use of force," the state may not punish the person unless "such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action."[25]

---

[24] *Id.*

[25] *Virginia v. Black*, 538 U.S 343, 359 (2003).

10

In 2011, in *Snyder v. Phelps*, the Supreme Court dismissed claims for infliction of emotional distress brought against the Westoboro Baptist Church for a protest at the funeral of a gay marine killed in Iraq, where the Church had placards that said things like: "God Hates Fags," "Thank God for Dead Soldiers," and "God Hates You."[26]  That is what the family had to see at the funeral of their deceased Iraq War veteran son.  Affirming the dismissal of the emotional distress claim, the Supreme Court found speech in a "public place on a matter of public concern" "cannot be restricted simply because it is upsetting or arouses contempt."[27]

First Amendment protections of speech and assembly are thus so strong that it is illegal for a southern state to assume that people gathering together to burn a cross intend to intimidate anyone, and a church can upset a family mourning the loss of their son killed in combat.

It is therefore absurd to suggest that unions exercising their First Amendment right to peacefully publicize their dispute over the exploitation of workers must be enjoined from doing so to spare a supermarket from being shamed for entering a lease-back arrangement pursuant to which workers are exploited. *Virginia v. Black* establishes that the government cannot presume the act of burning a cross in a southern state is meant to coerce other members of the community, but the Regional Director is arguing here that inflating balloons outside a shopping mall is *necessarily* coercive.

---

[26] *Snyder v. Phelps*, 562 U.S. 443, 448 (2011).

[27] *Id.* at 458.

11

We anticipate that the Regional Director may argue that the issues being raised by Local 79 at the strip mall are not of commensurate public concern with those of racists in Virginia who might seek to express their historically violent contempt for Black people or homophobes in Maryland who wish to express their death-celebrative abhorrence at the sexual preferences of fallen soldiers.

But that "logic" does not work for many reasons, especially in this Circuit.

In striking down an injunction against a picketing union in *Metropolitan Opera Association v. Local 100,* the Second Circuit vacated an injunction issued by the District Court that had prohibited it from "threatening or harassing" and "engaging in fraudulent or defamatory representations regarding the [Metropolitan Opera], its donors, officers, patrons, or directors."[28]  The Court explained that "the Supreme Court has expressly afforded a special breadth of protection to union speech that publicizes labor conflicts."[29]  Labor speech, for instance, is protected from claims of defamation to the same extent as publications in newspapers about public figures.  Still citing Supreme Court law, the Court explained that speech that might even b*e per se* illegal under state law is protected from sanction if it occurs in the context of a labor dispute, given that "intense,

---

[28] *Metropolitan Opera Ass'n v. Local 100,* 239 F.3d 172, 174 (2d Cir 2001).

[29] *Id.* at 177.

provocative speech is a common hallmark of American labor conflicts."[30]  The Court reasoned:

> Labor disputes are ordinarily heated affairs; the language that is commonplace there might well be deemed actionable *per se* in some state jurisdictions.  Indeed, representation campaigns are frequently characterized by bitter and extreme charges, countercharges, unfounded rumors, vituperations, personal accusations, misrepresentations and distortions.  Both labor and management often speak bluntly and recklessly, embellishing their respective positions with imprecatory language.[31]

Far from distinguishing labor disputes from civil rights battles, the Court drew analogies between the two movements (perhaps recognizing that they are one in the same struggle).  In dismissing the lower court's factual findings and condemning the tendency of the injunction it issued to chill lawful speech, the Court was unconcerned with the union's objectives, and in particular with whether the union "was motivated to coerce the Met through social pressure and the threat of social ostracism."[32]  The Second Circuit was similarly untroubled by the lower court's finding that the union warned of "repercussions" against those who did not join its boycott, such as leaflets condemning a small donor to the opera for refusing to join the boycott.[33]

---

[30] *Id.*

[31] *Id.* (quoting *Linn v. United Plant Guard Workers*, 383 U.S. 53, 58 (1966)).

[32] *Id.* at 177.

[33] *Id.* at 177-78.

13

The Court explained:

> Especially within the labor context, in seeking to exert
> social pressure on the Met, the Union's methods may be
> harassing, upsetting, or coercive, but *unless we are to
> depart from settled First Amendment principles, they are
> constitutionally protected.*[34]

And more generally, any attempt by the Regional Director to "logically"

separate the concerns raised by Local 79 on the public sidewalks outside two Shop

Rites from the kinds of public issues raised in *Virginia v. Black* or *Snyder v. Phelps*

makes no sense.  Local 79's leaflets articulated a message regarding a regrettable

new construction model Mannix Family Stores has adopted to get its latest Shop

Rite built, one in which the laborers lack union representation and do not get

anywhere near the compensation and training laborers who built previous Shop

Rites received.  That is an expression of concern regarding the ways the economy

distributes its rewards among its participants and about the training, and thus

safety, of the people who build those physical spaces.

In short, it is not just that it is well-established law in the NLRB and

federal courts that public speech *in general* can be incredibly confrontational and

upsetting while remaining in the ambit of First Amendment protection.  Courts

have afforded unions the highest level of latitude to draw attention to their

---

[34] *Id.* at 178 (citing *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 909-11,
(1982) (holding that a boycott of white-owned businesses, including the use of "store
watchers" who published names of those who entered boycotted businesses, was
entitled to First Amendment protection); *Organization for a Better Austin v. Keefe,*
402 U.S. 415, 419 (1971)).

14

message, with no content-based diminishment for speech on so called "secondary" issues.

### D.   To the Extent the Regional Director Seeks to Enjoin the Distribution of Leaflets, That Request Must Be Denied

In her Complaint dated June 6, 2019, the Regional Director twice alleges that the Union has distributed handbills to the public.[35]  In paragraph 20 of the Complaint, the Regional Director sets forth the alleged language of the leaflets. The Complaint, however, is unclear whether the Regional Director alleges that the Union has violated the NLRA through the distribution of leaflets, as opposed to by using the inflated balloons or conducting a rally on May 15.[36]

To the extent the Regional Director seeks to enjoin the distribution of leaflets, such an injunction is directly foreclosed by *DeBartolo*.

And yet to the extent the Regional Director does not seek to enjoin the leafleting (because leafleting is legal), she only undercuts her argument that there is something inherently unlawful about secondary messages.  The leaflets talked about Mannix, and Mannix is not the entity directly paying the construction laborers.  The Regional Director's theory is unconstitutional regardless.  One cannot respect *DeBartolo* but then advance an incredibly parsed reading of the case as somehow allowing secondary messages in leaflets but not by any other means.  It is

---

[35] Complaint ¶¶ 18, 20.

[36] Complaint ¶ 23 ("By the conduct described above in paragraphs 15 through 19, 21 and 22, Respondent has been violating Section 8(b)(4)(i) and (ii)(B) of the Act.") But paragraph 20 contains the allegations regarding the leaflets and the Complaint does not list paragraph 20 as setting forth alleged violations of the Act.

wholly irrational and unsupported to draw a distinction between messages delivered on 8.5 by 11 inch pieces of paper (*i.e.*, leaflets) and other ways of communicating (*e.g.*, inflated balloons).  The infirmity of that position can perhaps best be grasped by considering what it would mean for messages delivered by other methods, such as vocalizations, e-mails, texts, Twitter, Facebook, newspapers, etc.

## IV.  AN INJUCTION AGAINST THE UNION HOLDING A RALLY ON A PUBLIC SIDEWALK IS EQUALLY IMPROPER

The First Amendment does not merely protect the Union's right to express its displeasure towards Mannix, it equally protects the union members' right to assemble.[37]

There is no debate that today the public streets and sidewalks are the "archetype of a traditional public forum."[38]  Indeed, the Board has recognized the right of unions to conduct rallies on the sidewalk, even rallies that involve more than 1,000 persons and last several hours.[39]

Nothing that happened at the Union's lunch-time rally with about 20 members on May 15, 2019 somehow converted the union members' constitutionally-

---

[37] The First Amendment provides, in relevant part, that "Congress shall make no law... abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble."

[38] *Venetian Casino Resort v. Local Joint Exec. Bd.*, 257 F.3d 937, 948 (9th Cir. 2001) (affirming lower court's denial of injunction when casino sought to exclude union members from using sidewalk for demonstrations against the casino).

[39] *Venetian Casino Resort*, 345 N.L.R.B. 1061, 1061 (2005) (holding that casino violated the NLRA when it attempted a citizen's arrest of union agent for trespassing when he and other union members were on public sidewalk protesting casino's labor policies).

protected expressive conduct into a coercive "picket line."  There were not hundreds of members who participated in a rally hours long or on multiple days (which the Board has permitted), and the Regional Director does not allege otherwise.

There was no patrolling, and the Regional Director does not allege there was.

There were hardly any pedestrians even walking on the street near the Shop Rite store—customers almost always drive their cars to a Shop Rite—let alone any pedestrians who were blocked on the sidewalk, and the Regional Director does not allege there were.

No protesters blocked or circled the parking lot's entrance, and the Regional Director does not allege they did.

There were no picket signs being carried, and the Regional Director does not allege there were.

And if any of these kinds of things had happened it would be alleged because someone (presumably from Mannix) was present across from the rally video taping the whole thing, and the union too videoed most of it.  In the union's video, you can see cars moving undisturbed in and out of the large grocery store parking lot.  Protesters do not try to speak to the shoppers arriving by car, let alone "confront" them.  The rally occurs midday, which is not when workers arrive and there is no indication that the protesters are there to speak to or make a specific address directed at Shop Rite employees.  They are there "shaming" Mannix Family Stores and Shop Rite to the public in general, which is their right.

17

And that is the crux of what the Regional Director is interested in enjoining—any shaming of Mannix. She is likely to argue that labor speech is commercial in nature and therefore substantially unprotected. That is not the law, and it makes no sense, because how the economy treats workers is a deeply political subject. The message of Local 79 (and the labor movement more generally) is that workers do not want to be treated as inanimate, disposable objects in a commercial process, but as people.

The radicalness of the Regional Director's suggestion that the protesters and balloons should not be present on those sidewalks—at all, under effectively any circumstances—should not be lost on the Court. That same sidewalk has Shop Rite banners on the perimeter fence facing the inflated rat. Those banners advertise the bananas that await customers in the store. Local 79 and its members have a First Amendment right to publicize their own message, whether through protest balloons, leaflets, or peaceful rallies, to call attention to the ways workers are treated in the processes that those bananas and other products get to Shop Rite's shelves (*e.g.*, the way the shelves and other parts of the store get built).

The Regional Director is not merely advancing a "novel" legal theory, she is advocating an Orwellian one. It would mean that a federal administrative agency (the NLRB) can police the content of the undisputedly peaceful messages to which the public gets exposed as people go about their daily lives. It would mean that a federal agency could ban certain highly expressive images—like the inflated rat or maybe so too the inflated cockroach—because the balloons may cause the

18

public to think thoughts Shop Rite and the government do not want them to, such as how unfairly the economy treats workers.

## CONCLUSION

As the Second Circuit noted in *Silverman v. 40-41 Realty Associates*, "general equitable principles apply,"[40] even when the Regional Director seeks an injunction. Here, the Regional Director's request for injunctive relief is wholly undermined by any balancing of equities. On the one hand, there is the ability of members of society to express a dissenting, distinctly *anti-commercial* view in public, while on the other hand is Shop Rite's desire to be ignored for leasing space built for its occupancy by workers paid substandard wages. After nearly a month of no rallying (the one and only rally having occurred on May 15), the Regional Director fears another might occur on a public sidewalk, and that shoppers, workers, and members of the general public will possibly observe protest balloons that are contrary to the experience Shop Rite wants them to have. But neither Shop Rite nor the NLRB has any right—in pursuing or protecting Shop Rite's distinctly *commercial* interests—to so control what gets expressed about the store on adjacent *public* property.

In short, any claim that Local 79's speech can be silenced as unprotected "commercial" speech would, at a minimum, be ironic. For such a claim would require the Court to elevate a grocery store's commercial desire to provide a curated experience to its shoppers and workers over the interests of labor in

---

[40] *Silverman v. 40-41 Realty Assocs.*, 668 F.2d at 680.

articulating a contrary message. There is a distinction between commercial speech and labor speech, but in her request for injunctive relief the Regional Director reverses their priority, contrary to the First Amendment and well-settled Board law.

Principles of law and equity demand that no injunction issue in this case.[41]

Dated: June 13, 2019

Joseph J. Vitale
Cohen, Weiss and Simon LLP
900 Third Avenue, Suite 2100
New York, New York 10022
(212) 356-0238

Tamir W. Rosenblum
Mason Tenders District Council
  of Greater New York
520 Eighth Avenue, Suite 650
New York, New York 10018
(212) 452-9407

Counsel for Construction and General
Building Laborers Local 79

---

[41] *Ahmad v. Long Island Univ.*, 18 F.Supp.2d 245, 249 (E.D.N.Y. 1998) (denying preliminary injunction since plaintiff's motion was undermined by his delay in making it; delay "tends to indicate at least a reduced need for such drastic, speedy action").